**No. 23-30854**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

Floyd Ruffin,

*Plaintiff-Appellant*

v.

BP Exploration & Production, Incorporated; BP America Production Company

*Defendants-Appellees.*

————

**On Appeal from**

United States District Court for the Eastern District of Louisiana
U.S.D.C. Case No. 2:20-cv-334
The Honorable Ivan L.R. Lemelle
United States District Court Judge

**BRIEF OF PLAINTIFF-APPELLANT FLOYD RUFFIN**

Martha Y. Curtis
Hannah L. Brewton
**SHER GARNER CAHILL
RICHTER KLEIN & HILBERT LLC**
909 Poydras Street, Suite 2800
New Orleans, La 70112
(504) 299-2100
(504) 299-2300 Fax
**ATTORNEYS FOR PLAINTIFF-APPELLANT FLOYD RUFFIN**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Appellant certifies that the following listed persons and entities as described in the fourth sentence of the United States Court of Appeals for the Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1) **<u>Appellant-Plaintiff:</u>**

Floyd Ruffin ("Ruffin"), a natural person of the age of majority and a citizen and resident of Terrebonne Parish, Louisiana.

2) **<u>Counsel for Appellant-Plaintiff:</u>**

Martha Y. Curtis
Hannah L. Brewton
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112-4046
(504) 299-2100

C. David Durkee
THE DOWNS LAW GROUP, PA
3250 Mary Street, Suite 307
Coconut Grove, Florida 33133
(305) 444-8226

**3) <u>Appellees-Defendants:</u>**

BP Exploration & Production, Incorporated; BP America Production Company (collectively, "BP Defendants"). Both BP Defendants are incorporated in Delaware, with their principal place of business in Houston, Texas.

**4) <u>Counsel for Appellees-Defendants:</u>**

Devin Chase Reid
Charles B. Wilmore
LISKOW & LEWIS APLC
701 Poydras St #5000, New Orleans, LA 70139
(504) 581-7979

George W. Hicks, Jr.
Rex Manning
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
(202) 879-5000

Dated: April 3, 2024

*S/ Martha Y. Curtis*

_____

**MARTHA Y. CURTIS
ATTORNEY OF RECORD FOR
FLOYD RUFFIN**

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant, Floyd Ruffin ("Ruffin"), respectfully submits that oral argument will assist this Court in deciding the issues presented by the parties in this appeal.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .........................................................................6

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF ISSUES ......................................................................3

STATEMENT OF THE CASE .................................................................4

    I.      MR. FLOYD RUFFIN ...........................................................4

    II.    THE HARMFUL CHEMICALS RESULTING
          FROM THE DEEPWATER HORIZON OIL SPILL
          AND ITS RESPONSE ACTIVITIES ...................................4

    III.   PROCEDURAL BACKGROUND/THE MEDICAL
          BENEFIT CLASS ACTION SETTLEMENT AGREEMENT ...........6

    IV.   RUFFIN'S EXPOSURE TO TOXINS RESULTING
          FROM THE OIL SPILL ........................................................7

    V.    THE *DAUBERT* MOTION AND MOTION FOR
          SUMMARY JUDGMENT.....................................................8

SUMMARY OF THE ARGUMENT ......................................................10

ARGUMENT ........................................................................................11

    I.      STANDARD OF REVIEW AND MOTION FOR SUMMARY
          JUDGMENT STANDARD....................................................11

    II.    THE *DAUBERT* STANDARD AND COURTS AS
          GATEKEEPERS ..................................................................12

    III.   THE CIRCUIT SPLIT REGARDING THE STANDARD
          OF CAUSATION FOR EXPERTS ......................................14

IV.    THE DISTRICT COURT ABUSED ITS
DISCRETION IN EXCLUDING THE EXPERT
TESTIMONY OF DR. RYBICKI......................................................21

    A.    *The District Court applied an inflated*
*standard for causation.* ...........................................................21

    B.    *The District Court should have applied*
*a lenient standard in the interest of equity* ...............................26

V.    THE DISTRICT COURT ERRED WHEN IT
GRANTED SUMMARY JUDGMENT AND
DISMISSED RUFFIN'S CASE...........................................................29

CONCLUSION .......................................................................................30

CERTIFICATE OF SERVICE ................................................................31

CERTIFICATE OF COMPLIANCE........................................................32

CERTIFICATE OF ELECTRONIC COMPLIANCE ............................................33

# TABLE OF AUTHORITIES

## CASES

*Allen v. Pennsylvania Engineering Corporation,*
102 F.3d 194 (5th Cir. 1996). ..........................................................................23

*Celotex Corporation v. Catrett,*
477 U.S. 371 (1986)........................................................................................12

*Clark v. Kellogg Brown & Root L.L.C.,*
414 F. App'x 623 (5th Cir. 2011) ..................................................................21

*Daubert v. Merrel Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)..................................................................................*passim*

*Davis v. Hill Engineering, Inc.*,
549 F.2d 314 (5th Cir. 1977) ..........................................................................21

*Great Lakes Insurance v. Raiders Retreat Realty Co., LLC*,
601 U.S. 65 (2024)..........................................................................................14

*Harrison v. BP Exploration & Production Inc*.,
No. 17-4346, 2022 WL 2390733 (E.D. La. July 1, 2022).............................13

*Heinsohn v. Carabin & Shaw, P.C.*,
832 F.3d 224 (5th Cir. 2016) ..........................................................................11

*In re Paoli R.R. Yard PCB Litig*.,
35 F.3d 717 (3d Cir. 1994) .............................................................................15

*Knight v. Kirby Inland Marine, Inc.*,
482 F.3d 347 (5th Cir. 2007) .............................................................11, 12, 13

*Landry v. Two R. Drilling Co.*,
511 F.2d 138 (5th Cir. 1975) ..........................................................................21

*Maas v. BP Exploration & Production, Inc*.,
576 F. Supp. 3d 564 (M.D. Tenn. Dec. 21, 2021).............................15, 19, 20

*McGill v. BP Exploration & Production, Inc.,*
    830 Fed. Appx. 430 (5th Cir. 2020) ........................................................18, 19

*Meditrust Fin. Servs.Corp. v. Sterling Chemicals, Inc.*,
    168 F. 3d 211 (5th Cir. 1999) ........................................................................11

*Milward v. Acuity Specialty Products Group, Inc*.
    639 F.3d 11 (1st Cir. 2011)....................................................16, 17, 18, 19, 26

*Moore v. Ashland Chemical Inc*.,
    151 F.3d 269 (5th Cir. 1998) ........................................................................27

*Norfolk Southern R. Co. v. James N. Kirby, Pty Ltd*.,
    543 U.S. 14 (2004)..........................................................................................14

*Plancun v. BP Exploration & Production, Inc.*,
    No. 15-2963, 2016 WL 7187946 (E.D. La. Dec. 12, 2016)..........................24

*Pluck v. BP Oil Pipeline Co*.,
    640 F.3d 671 (6th Cir. 2011) ........................................................................15

*Porte v. Illinois Cent. R.R. Co.,*
    CV 17-5657, 2018 WL 4404063 (E.D. La. Sept. 14, 2018).........................22

*Roman v. W. Mfg., Inc*.
    691 F.3d 686 (5th Cir. 2012) ..................................................................11, 28

*Turner v. Iowa Fire Equip. Co*.,
    229 F.3d 1202 (8th Cir. 2000) ......................................................................15

*U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore County,
State of Mississippi*,
    80 F.3d 1074 (5th Cir. 1996) ........................................................................13

*United States v. Ramer*,
    883 F.3d 659 (6th Cir. 2018) ........................................................................20

*United States v. Valencia*,
    600 F.3d 389 (5th Cir. 2010) ........................................................................28

*Urbano v. Continental Airlines, Inc.*,
  138 F. 3d 204 (5th Cir. 1998) ......................................................................... 11

*Vallot v. Cent. Gulf Lines, Inc*.,
  641 F.2d 347 (5th Cir. 1981) .......................................................................... 21

*Westberry v. Gislaved Gummi AB*,
  178 F.3d 257 (4th Cir. 1999) .......................................................................... 15

*Williams v. Manitowoc Cranes, L.L.C.*,
  898 F.3d 607 (5th Cir. 2018) .......................................................................... 11

## STATUES/RULES

28 U.S.C. § 1291 ....................................................................................................... 2

28 U.S.C. § 1331 ....................................................................................................... 1

28 U.S.C. § 1332 ....................................................................................................... 1

28 U.S.C. § 1333 ....................................................................................................... 1

46 U.S.C. § 30101 ..................................................................................................... 1

Fed. R. Civ. P. 54 ...................................................................................................... 2

Fed. R. Civ. P. 56(c) ............................................................................................... 12

FED. R. EVID. 702 ....................................................................................... 12, 13, 15

## JURISDICTIONAL STATEMENT

Jurisdiction exists over this litigation arising out of the *Deepwater Horizon* oil spill—an accident on the Outer Continental Shelf—under 28 U.S.C. § 1332, because all the parties are diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. ROA.84. Additionally, this Court has jurisdiction under 28 U.S.C. § 1331 based on Federal Question for the federal judiciary to hear all cases of admiralty and maritime jurisdiction. ROA.84. Finally, this Court has jurisdiction under 28 U.S.C. § 1333 and 46 U.S.C. § 30101 which extends the admiralty and maritime jurisdiction of the United States to "cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." ROA.84.

The United States District Court for the Eastern District of Louisiana was also the proper venue in this matter, as this case arises from the "Back-End Litigation Option" ("BELO") process described in the Medical Benefits Class Action Settlement Agreement ("MSA") entered into by the BP Defendants and the Class. ROA.84. The MSA was approved by Judge Barbier of the Eastern District of Louisiana, who oversees the *Deepwater Horizon* MDL, and has continuing and exclusive jurisdiction over the MSA.  For physical conditions diagnosed after April 16, 2012, the MSA provides for BELO litigation in the United States District Court for the Eastern District of Louisiana.  MSA § VIII.  Pursuant to the terms contained

in the MSA's BELO provisions, Ruffin sued the BP Defendants in the Eastern District of Louisiana. ROA.85. This case was then consolidated with Case No. 22-cv-1006. ROA.524.

This Court has jurisdiction over this Appeal pursuant to Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1291 because it is an appeal of a final judgment entered by the District Court. ROA.10416. On November 1, 2023, the District Court issued a final and appealable judgment dismissing Ruffin's claims against BP with prejudice (the "Judgment") ROA.10415. On November 30, 2023, Ruffin filed a timely notice of appeal of the Judgment. ROA.10416.

## STATEMENT OF ISSUES

1. Whether the District Court was clearly erroneous when it excluded Plaintiff's expert, where that expert relied on proper methodology and data and was necessary to prove the necessary elements of legal causation, including the level and extent of exposure to harmful chemicals required in a toxic tort case.

2. Whether, because of the erroneous granting of the BP Defendants' Motion to Exclude expert testimony, the District Court erred in granting Defendants' Motion for Summary Judgment, dismissing this lawsuit in its entirety.

## STATEMENT OF THE CASE

### I.    MR. FLOYD RUFFIN

This Appeal arises from litigation for damages sustained from Clean-Up Worker Floyd Ruffin's exposure to harmful chemicals from responding to the BP Oil Spill.  ROA.32.  As a result of the response efforts following the BP Oil Spill and Ruffin's exposure to harmful chemicals, Ruffin suffered permanent injuries. ROA.33. On September 14, 2015, Ruffin was diagnosed with Prostatic Adenocarcinoma. ROA.33.

### II.   THE HARMFUL CHEMICALS RESULTING FROM THE DEEPWATER HORIZON OIL SPILL AND ITS RESPONSE ACTIVITIES

The Deepwater Horizon Rig (the "DHR") was an oil-drilling rig on the outer continental shelf in the Gulf of Mexico.  ROA.30.  On April 20, 2010, the blowout of the Macondo Well, drilling by the DHR on the Outer Continental Shelf of the Gulf of Mexico located on the Mississippi Canyon, resulted in explosions and fire on board the DHR.  ROA.30. Crude Oil flowed from the damaged Mississippi Canyon 252 well (the "MC252 well"). Following the explosion, Crude Oil and other hydrocarbons were released from the MC252 well (the "MC252 oil").  ROA.30.  The oil released contained other volatile organic compounds ("VOCs") such as ethylbenzene, toluene, xylene and naphthalene; polycyclic aromatic hydrocarbons

("PAHs"); diesel fumes, and heavy metals such as aluminum, cadmium, nickel lead, and zinc. ROA.30.

After the explosions, response activities were performed by Clean-Up Workers under the direction of Unified Command. ROA.31. As part of the response activities, the BP Defendants purchased highly noxious chemical dispersants from NALCO and/or its subsidiaries which were sprayed over large areas, including Corexit®9500A and Corexit® EC9527A (collectively referred to as "Dispersants"). ROA.31.

According to the Material Safety Data Sheets ("MSDS"),[1] the crude oil and Dispersants are eye and skin irritants, containing hazardous substances that are harmful to human health. ROA.31. Dermal exposure, inhalation, and ingestion of crude oil and Corexit® EC 9500 should be avoided. ROA.53. If inhaled, the crude oil and Dispersants may irritate the respiratory tract. ROA.31. If ingested, Corexit® EC9527A may cause liver and kidney effects and/or damage or irritate the gastrointestinal tract. ROA.31. Acute exposure may cause adverse central nervous system effects, nausea, vomiting, and anesthetic or narcotic effects. ROA.31.

Corexit® EC9527A contains 2-butoxyethanol ("2-BE"). ROA.31. The chemical 2-BE is an eye, nose, and throat irritant that can cause nausea, vomiting,

---

[1] A "data sheet" is a form that sets forth the properties of a particular substance, including its toxicity and health effects.

diarrhea, and abdominal pain. ROA.31. Repeated or excessive exposure to 2-BE may cause injury to red blood cells, the kidneys, and the liver. ROA.32. Exposure to 2-BE can also cause headaches, dizziness, lightheadedness, and unconsciousness. ROA.32. Exposure to 2-BE can damage a developing fetus, and chronic exposure may result in damage to the male and female reproductive systems in animals. ROA.32.

The Dispersants also contain non-specified organic sulfonic acid salt, which is "moderately toxic," as well as propylene glycol, a chemical with solvent properties. ROA.32. Propylene glycol is a mild irritant and exposure to high levels can cause eye, nose, throat, and lung irritation. ROA.32. Some individuals are allergic to propylene glycol and those with eczema may be at a higher risk. ROA.32. Exposure may cause erythema, edema, induration, and other skin problems. ROA.32.

## III. PROCEDURAL BACKGROUND/THE MEDICAL BENEFIT CLASS ACTION SETTLEMENT AGREEMENT

This litigation arises out of the Medical Benefits Class Action Settlement Agreement (the "MSA") filed in the *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (commonly referred to as "MDL 2179"). ROA.160. On January 11, 2013, District Judge Carl J. Barbier approved the MSA that comprised of individuals who, among other things, were Clean-Up Workers. ROA.160.

While class members who did not opt out of the MSA surrendered their rights to sue BP for medical conditions, the MSA carved out an exception known as a "Back-End Litigation Option" ("BELO") procedure to permit class members who did not opt out to sue the BP Defendants for claims with dates of first medical diagnosis after April 16, 2012. ROA.503. The BP Defendants have stipulated to fault and are responsible for any and all damages that were proximately caused as a result of this event, including damages caused to class members who allege a Later Manifested Physical Condition ("LMPC") under the BELO lawsuits. ROA.503.

## IV.    RUFFIN'S EXPOSURE TO TOXINS RESULTING FROM THE OIL SPILL

Ruffin was a "Clean-Up Worker" within the scope of the MSA. *See* ROA.830.  Ruffin's duties as a Clean-Up worker included performing shoreline cleanup, boom deployment, boom recovery, and boom decontamination.  ROA.841. Ruffin's duties in performing response activities included picking up tar balls and dead animals from the shoreline, deploying booms, recovering booms, and decontaminating booms. ROA.841. Through these duties, Ruffin was exposed to oil, Dispersants, and other harmful chemicals throughout the duration of his time as a Clean-Up Worker.  ROA.842. For example, Clean-Up Workers would have to remove tar mats (large pieces of petroleum product) which were of such size that it was necessary to break them into pieces to lift and remove them. Some pieces contained a center which was gelatinous and, when exposed to the air, would begin

volatilization and "off-gassed" into the faces or otherwise onto the workers. ROA.842. As a result of Ruffin's exposure to these chemicals, Ruffin suffered serious permanent injuries.  ROA.842.

On September 14, 2015, Ruffin was diagnosed with Prostatic Adenocarcinoma. ROA.842. Ruffin also developed a reasonable fear that in the future he may develop a severe disease, injury, or illness, including, but not limited to, additional cancer arising out of, resulting from, and/or relating to his LMPC. ROA.843.

On January 29, 2020, Ruffin timely filed suit in the Eastern District of Louisiana. ROA.28.  Ruffin sued the BP Defendants, claiming that his permanent injuries were legally and proximately caused by his exposure to oil, dispersants, and other harmful chemicals from the Oil Spill.  ROA.28.

## V.   THE *DAUBERT* MOTION AND MOTION FOR SUMMARY JUDGMENT

On August 8, 2023, the BP Defendants filed a Motion to Exclude the Opinions of Plaintiff's Expert Dr. Benjamin Rybicki. ROA.2784. The BP Defendants argued that Dr. Rybicki did not meet the requirements to opine on causation in the present toxic tort case because Dr. Rybicki did not identify a quantitative dosage of harmful chemicals to which Ruffin was exposed. In response, Ruffin argued that BP erroneously attempted to create a higher standard than legally required by alleging that Plaintiff's experts are required to identify a numerical dosage of exposure to a

harmful chemical that is necessary to cause harm in the general population. ROA.7053.

In excluding Plaintiff's expert epidemiologist Dr. Rybicki, the District Court noted the clear circuit split regarding the standards required for a plaintiff to satisfy the causation requirements in toxic tort cases. Despite the acknowledgement that the causation standard applied to BELO cases is impossible to meet, the District Court failed to give leniency to Ruffin in evaluating Dr. Rybicki as is allowed within the discretion of the court. Indeed, the uniformity of the maritime law only calls for a "featherweight" standard to be applied to a plaintiff's burden of proof—an issue briefed by Ruffin but which the District Court failed to take up, and which has not been addressed by an appellate court to date. Because the District Court failed to follow the standard required in maritime law, it excluded Plaintiff's expert epidemiologist Dr. Rybicki. After excluding Plaintiff's expert, Ruffin was then unable to demonstrate the causation element of his claim. ROA.10414. The District Court then dismissed Ruffin's claims against the BP Defendants in their entirety. ROA.10415.

## SUMMARY OF THE ARGUMENT

The District Court erred in excluding the testimony of Dr. Rybicki, relying on an inflated and incorrect standard for what constitutes a reliable opinion on the level of exposure required to prove causation in toxic tort cases. The District Court should have applied the "featherweight" standard for causation in uniformity with the maritime law, as followed by various circuit courts of appeal. Additionally, by striking any opinions regarding causation, the District Court denied Ruffin a reasonable opportunity to oppose BP's Motion for Summary Judgment.   As such, this Court should reverse the judgment dismissing Ruffin's claims and remand the case for further proceedings.

## ARGUMENT

### I.    STANDARD OF REVIEW AND MOTION FOR SUMMARY JUDGMENT STANDARD

An appellate court reviews the district court's admission or exclusion of expert testimony for an abuse of discretion. *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614-15 (5th Cir. 2018); *see also Roman v. W. Mfg., Inc*. 691 F.3d 686, 692 (5th Cir. 2012). This Court will not find that the district court abused its discretion unless the ruling is manifestly erroneous. *Id*. "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 233 (5th Cir. 2016). A judgment is reversed if the error is one where "the ruling affected substantial rights of the complaining party." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).

Further, an appellate court reviews the District Court's ruling on a summary judgment *de novo*. *Meditrust Fin. Servs.Corp. v. Sterling Chemicals, Inc.*, 168 F. 3d 211, 213 (5th Cir. 1999) (citing *Urbano v. Continental Airlines, Inc.*, 138 F. 3d 204, 205 (5th Cir. 1998). Summary judgment is appropriate only when, viewing the evidence in light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.

*Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 371, 322-24 (1986); Fed. R. Civ. P. 56(C)).

## II.    THE *DAUBERT* STANDARD AND COURTS AS GATEKEEPERS

Expert testimony is admissible under Federal Rule of Evidence 702 where:

> (a) the expert's scientific technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b)the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. has long been interpreted under the standards set forth in the in

*Daubert v. Merrel Dow Pharmaceuticals, Inc.*, which provides non-exclusive factors

for courts to use in determining the reliability of expert testimony: (1) whether the

expert's theory can be or has been tested, (2) whether the theory has been subject to

peer review and publication, (3) the known or potential rate of error of a technique

or theory when applied, (4) the existence and maintenance of standards and controls,

and (5) the degree to which the technique or theory has been generally accepted in

the scientific community. *Knight v. Kirby Inland Marine,* 482 F.3d 347, 354 (5th

Cir. 2007).

The Supreme Court in *Daubert* explained that courts are gatekeepers,

requiring a "preliminary assessment of whether a proposed expert's reasoning or

methodology "is scientifically valid" as applied to the facts at issue. *Daubert*, 509

U.S. at 592-93. As this Court has held, "[a]s a general rule, questions related to the

bases and sources of an expert's opinion affect the *weight* to be assigned that opinion

rather than its *ability* and *should be left for the jury's consideration.*" *U.S. v. 14.38*

*Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074,

1077 (5th Cir. 1996)(emphasis added).

   In considering the opinions of causation experts, courts within this circuit

have found that "courts do not require a mathematically precise table equating levels

of exposure with levels of harm." *Harrison v. BP Expl. & Prod. Inc.*, No. 17-4346,

2022 WL 2390733 at *6 (E.D. La. July 1, 2022). As this Court has also held,

"[w]here an expert otherwise reliably utilizes scientific methods to reach a

conclusion, lack of textual support may go to the *weight* and *not the admissibility* of

the expert's testimony." *Knight v. Kirby Inland Marine,* 482 F.3d 347, 354 (5th Cir.

2007)(emphasis added).  Thus, the court's role as a gatekeeper of admissible expert

testimony should not rely on the adjudication of the correctness or sufficiency of

testimony, as that is a role for the finder of fact in giving weight to such testimony.

This Court *in Knight v. Kirby Inland Marine* explained that:

> We are mindful that under Daubert and FED. R. EVID. 702, a district
> court has broad discretion to determine whether a body of evidence
> relied upon by an expert is sufficient to support that expert's opinion.
> **We also understand that in epidemiology hardly any study is ever
> conclusive, and we do not suggest that an expert must back his or
> her opinion with published studies that unequivocally support his
> or her conclusions.** Where an expert otherwise reliably utilizes
> scientific methods to reach a conclusion, **lack of textual support may
> go to the weight and not the admissibility of the expert's testimony**.

*Knight*, 482 F.3d at 354 (5th Cir. 2007) (internal citations omitted)(emphasis added).

The fact that epidemiological studies have limitations does not warrant complete exclusion of expert opinions, because all studies have limitations. Further, as this Court has noted, any alleged issues regarding textual support should go to the *weight* of the expert's testimony, *not* its *admissibility*. Thus, the District Court erroneously excluded Dr. Rybicki by weighing the credibility of his testimony instead of evaluating the admissibility of the testimony.

## III.    THE CIRCUIT SPLIT REGARDING THE STANDARD OF CAUSATION FOR EXPERTS.

As most recently noted by the United States Supreme Court, the grant of admiralty and maritime jurisdiction "contemplates a system of maritime law 'coextensive with, and operating uniformly in, the whole country.'" *Great Lakes Insurance v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 69 (2024) (quoting *Norfolk Southern R. Co. v. James N. Kirby, Pty Ltd*., 543 U.S. 14, 28 (2004). Similarly, this case, brought under the MSA as a BELO claim, is governed by such admiralty and maritime jurisdiction. ROA.84.

However, despite this clear necessity of uniformity in maritime law throughout the country, there is a circuit split on the application of causation standards for toxic tort cases that fall under admiralty and maritime jurisdiction. As the Supreme Court has continuously held, "Confusion and inefficiency will inevitably result if more than one body of law governs a given contract's meaning." *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 16 (2004). The same can be

said for the non-uniform application of expert admissibility standards regarding toxic torts under maritime law.

In circuits other than the Eleventh and Fifth, courts allow for a more equitable and liberal interpretation of *Daubert* and Evidentiary Rule 702—an interpretation consistent with the spirit and purpose of the law by affording room for flexible application of *Daubert* factors on a case-by-case basis, with due consideration given to the science of the case, the uncertain nature of the data, and the inability for expert scientists to reach goals that are extremely hard to meet given the scientific data available. *See e.g. Maas v. BP Expl. & Prod., Inc*., 576 F. Supp. 3d 564 (M.D. Tenn. 2021) (quoting *Pluck v. BP Oil Pipeline Co*., 640 F.3d 671, 678 (6th Cir. 2011)); *see also In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 758-62 (3d Cir. 1994) (holding differential diagnosis methodology is generally reliable under Daubert and Rule 702); *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999) ("the overwhelming majority of the courts of appeals that have addressed the issue have held that a medical opinion on causation based upon a reliable differential diagnosis is sufficiently valid to satisfy the first prong of the Rule 702 inquiry") (collecting cases); *see also Turner v. Iowa Fire Equip. Co*., 229 F.3d 1202, 1209 (8th Cir. 2000) ("The first several victims of a new toxic tort should not be barred from having their day in court simply because the medical literature, which will eventually show the

connection between the victims' condition and the toxic substance, has not yet been completed.").

In this case, the District Court noted the lack of uniformity between the circuits on the issue of the applicable standard for causation expert admissibility in these types of cases multiple times during oral argument:

> ➢ "As stated earlier… sometimes the district judges have to render opinions that are based upon binding precedent…I do believe and I took a look at the Milward case in the First Circuit, this to me in my opinion, as if somebody is going to listen to me up there in D.C., **is very ripe issue** for the Supreme Court to resolve, (*sic*) what I think is a developing conflict, between at least the Fifth Circuit and the First Circuit." ROA.10645-10646. (emphasis added).

> ➢ "Is any of this --- any of these issues directly or remotely in the subject of any attempts to get this to the Supreme Court?" at ROA.10591.

> ➢ "But no writs pending before the Supreme Court?...I'm thinking this issue of impossibility, for instance, in what we're talking about now even, it seems to me to be –particularly if there's a split in the circuits in that regard." at ROA.10591.

> ➢ "I'm surprised that hasn't been done because you've got this split – well, it appears to me at least to be a split." ROA.10592.

Specifically, the District Court identified the stark difference in application between the Fifth Circuit Court of Appeal precedent in various cases against the BP Defendants and the First Circuit Court of Appeals in the case *Milward v. Acuity Specialty Products Group, Inc*. 639 F.3d 11 (1st Cir. 2011).

16

In *Milward*, the First Circuit reversed the District Court's exclusion of a Plaintiff's expert's general causation testimony on whether the chemical benzene could cause a specific type of cancer- Acute Promyelocytic Leukemia ("APL"). The First Circuit held that "Dr. Smith's testimony is admissible. **We stress that it is up to the jury to decide whether to accept his opinion** that exposure to benzene can cause APL – a proposition that plaintiffs must prove by a preponderance of the evidence." *Milward*, 639 F.3d at 15 (emphasis added). In so holding, the First Circuit quoted *Daubert*, "So long as an expert's scientific testimony rests upon **'good grounds,' based on what is known,'** it should be tested by the adversarial process, **rather than excluded for fear that jurors will not be able to handle the scientific complexities**." *Id*. (quoting *Daubert*, 509 U.S. at 590) (emphasis added).

The First Circuit in *Milward* found that Dr. Smith's expert opinion was admissible even when Dr. Smith did not identify a dose response based on the Plaintiff's specific background, and instead performed a differential diagnosis that found biological plausibility and a mechanistic analysis that was sufficient to evaluate a causal relationship. The First Circuit called this combination of various lines of scientific inquiry into the cause of the plaintiff's APL a "weight of the evidence" to making causal determinations that "involves a mode of logical reasoning often described as 'inference to the best explanation,' in which the conclusion is not guaranteed by the premises." *Id*. at 17. The First Circuit was clear

that this type of scientific approach, in which Dr. Smith made his opinion based on his expertise and inferences from various types of studies without identifying a specific dosage threshold, was not "any less scientific" simply because Dr. Smith had to use his scientific judgment to weigh the evidence available. *Id*. at 18. "No matter what methodology is used, an evaluation of data and scientific evidence to determine whether an inference of causation is appropriate requires judgment and interpretation." *Id*.

The weight of the evidence approach endorsed by the First Circuit is far from the stringent and nearly "impossible" standard of identification of specific dosage levels followed by the Fifth Circuit. *See* ROA.10641. For example, in *McGill v. BP Expl. & Prod., Inc.*, this Court found that the dosage requirement was not met by the Plaintiff's expert. 830 Fed.Appx. 430 (5th Cir. 2020). However, the expert in *McGill* was a pulmonologist who was unable, and unqualified, to explain what the Plaintiff's individual exposure was in terms of duration, PPE, and work being done. Dr. Rybicki is a highly qualified epidemiologist who has extensively published on the topic of occupational exposure who also specializes in PAH's causal role in prostate cancer diagnoses. ROA.7049. Dr. Rybicki's opinion in this case is more parallel to that of Dr. Smith's in *Milward*, as Dr. Rybicki used his scientific expertise and judgment in analyzing epidemiologic studies on occupational exposures to oil and

PAH's as well as mechanistic studies that evaluate how PAH's can attack DNA to create an increased risk of prostate cancer.

The First Circuit more closely follows the gatekeeper role that was intended for courts evaluating the admissibility of an expert's opinion. In reversing the District Court's exclusion of the Plaintiff's causation expert in *Milward*, the First Circuit explained that: "the [district] court both placed undue weight on the lack of general acceptance of Dr. Smith's conclusions and crossed the boundary between gatekeeper and trier of fact. Although general acceptance is still a relevant consideration under Daubert, **the court's demands went too far**." *Milward*, 639 F.3d at 22.(emphasis added). The Fifth Circuit, in setting such a severe standard for causation experts to meet, has essentially changed the role of the district courts, surpassing their intended duty of gatekeeper.

Recently, a district court in the Sixth Circuit has applied a less stringent standard for the admissibility of a BELO causation expert's opinion in *Maas v. BP Expl. & Prod., Inc.* that is more in line with the original standard set for the admissibility of experts. 576 F.Supp. 3d 564 (M.D. Tenn. Dec. 21, 2021). In *Maas*, the District Court cited to *McGill* in noting that "the Fifth Circuit (where most BELO cases arise) has declined to decide whether the toxic tort standard or another causation standard applies to BELO litigation. However, district courts have a practice of applying the toxic tort causation standard in BELO litigation." *Id*. at 568,

fn. 1. (internal quotations omitted). The District Court in *Maas* denied BP's motion for summary judgment in finding that the Plaintiff's causation expert's opinion was sufficient to meet the causation standard.

The District Court in *Maas* held that "the law does not require more specificity" than an opinion that Plaintiff's "purported injuries were caused generally by 'Corexit'" to support an opinion of general causation. *Id*. at 568. Further, the District Court found that a differential diagnosis along with a statement of the length of Plaintiff's exposure was sufficient to support an opinion of specific causation, specifically refusing to apply the dosage standard asserted by BP and followed by this Court. *Id*. at 569. Finally, the District Court in *Maas* found that BP's attack of the information relied upon by the Plaintiff's causation expert "merely go to the weight, as opposed to the admissibility, of the expert testimony." *Id*. at 569. (quoting *United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018)).

The standard applied by the District Court in the Sixth Circuit is parallel to that of the original expert standard set out by the Federal Rules of Civil Procedure and *Daubert*. This application of this baseline standard to the BELO case should similarly be followed in this Circuit, and such an application would likewise comport with the uniformity principle underlying general maritime law.

## IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN EXCLUDING THE EXPERT TESTIMONY OF DR. RYBICKI.

### A. The District Court applied an inflated standard for causation.

Dr. Rybicki's expert opinions on general and specific causation are sufficient to meet the standard that applies to plaintiffs proving proximate cause in actions based on general maritime law, which this Court has described as "featherweight." *See Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 331 (5th Cir. 1977) ("The burden on the plaintiff to prove proximate cause in actions based on general maritime law . . . is very light, even 'featherweight'"). Numerous Fifth Circuit decisions have recognized that the "featherweight" causation standard applies to claims brought under general maritime law. *See e.g. Vallot v. Cent. Gulf Lines, Inc*., 641 F.2d 347, 350 (5th Cir. 1981) ("The burden of proving proximate causation in actions based on general maritime law . . . is very light"); *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975) (burden on plaintiff under maritime law is "very light"). This Court has continued to apply the "featherweight" standard to claims under maritime law post-*Daubert*. *Clark v. Kellogg Brown & Root L.L.C.,* 414 F. App'x 623, 626-27 (5th Cir. 2011) (applying "featherweight" standard in affirming district court's finding of general causation on general maritime and Jones Act claims).

This light causation standard should be applied to Ruffin's burden here in uniformity with general maritime law. Under this "featherweight" standard, Dr.

Rybicki's testimony is more than sufficiently helpful and useful for establishing the general and specific causation elements of Ruffin's claim.

The District Court's own ruling in *Porte v. Illinois Cent. R.R. Co.* is directly on point in this case, however it was erroneously disregarded in the District Court's ruling to exclude Dr. Rybicki. Case No. CV 17-5657, 2018 WL 4404063 (E.D. La. Sept. 14, 2018). In *Porte*, the district court applied the "featherweight" standard and admitted expert testimony without requiring the identification of a "dose" level of chemicals, finding the expert demonstrated the requisite scientific knowledge of the harmful level of exposure and knowledge of the plaintiff's exposure to such quantities without pointing to a "qualified level of exposure." *Id*. at \*2. The court in *Porte* found that there were inherent limitations in the evidence because "only rarely are humans exposed to chemicals in a manner that permits quantitative determination of adverse outcomes." *Id*. (citing federal Judicial Center, Reference Manual on Scientific evidence 187 (1994)). These limitations in evidence brought the court to rely on qualitative evidence to find that the level of the substance was adequate "to permit a rational factfinder to conclude that the plaintiff was exposed to high concentrations." *Id*. These same limitations apply here, where Dr. Rybicki has described it to be "impossible" to identify a precise, quantitative dosage of benzo(a)pyrene. ROA.7086, 7141.

While the District Court relies on *Allen v. Pennsylvania Engineering Corp.* for the concept that legal causation must include scientific knowledge of a "harmful level of exposure to a chemical" to be paired with "knowledge that the plaintiff was exposed to such quantities," nowhere in *Allen* does the Court state that there is no causation without the identification of a precise quantifiable dose of exposure. 102 F.3d 194 (5th Cir. 1996).

> As Judge Barbier of the Eastern District of Louisiana stated,
>
> The general causation inquiry in toxic tort cases is not limited to environmental sampling data taken as part of the incident at issue. Instead, an expert may consult *all* relevant scientific and medical literature on the harmful effects of the chemicals at issue to determine whether a relevant chemical has the capacity to cause the harm alleged by the plaintiff in the general population.
> *See* Order, *In re: Deepwater Horizon B-3 cases*, No. 17-03188, Doc. 63 (E.D.La. Oct. 12, 2022).

Dr. Rybicki followed this inquiry laid out by Judge Barbier by interpreting the relevant scientific and medical literature on the causation between benzo(a)pyrene and cancer and applying his analysis to Ruffin.

Dr. Rybicki is a well-published epidemiologist with significant experience in occupational exposure who also specializes in PAH's causing an increased risk of prostate cancer. ROA.7049. Consistent with his expertise, Dr. Rybicki focused on Mr. Ruffin's exposure to PAH's, specifically the impact of benzo(a)pyrene, a well-known and generally accepted carcinogenic chemical, as recognized by the International Agency for Research on Cancer. ROA.7078. As more fully explained

below, in excluding Dr. Rybicki as an expert on causation in this case, the District Court erroneously found that Dr. Rybicki's opinions on general and specific causation were insufficient to satisfy the element of legal causation despite his extensive qualifications as an epidemiological expert.

It is undisputed that in a BELO suit, the plaintiff must prove legal causation, which consists of both general and specific causation. MSA § VIII(G)(3)(a)(iv). *Plancun v. BP Expl. & Prod., Inc.*, No. 15-2963, 2016 WL 7187946 at * 7 (E.D. La. Dec. 12, 2016). A plaintiff must prove general causation by determining "whether a relevant chemical has the capacity to cause the harm alleged by the plaintiff in the general population." *See* Order, *In re: Deepwater Horizon B-3 cases*, No. 17-03188, Doc. 63 (E.D.La. Oct. 12, 2022). To establish general causation, Dr. Rybicki undertook a two-step method in which he (1) attempted to identify an association in the literature, and (2) applied the Bradford Hill criteria to determine if there is a causal association between prostate cancer and PAH exposure. ROA.7069.

In evaluating the literature, Dr. Rybicki discussed each study's design, size, bias, and relevance to analogous exposure to PAHs, and his report includes a balanced discussion of studies with positive associations and no observed associations. ROA.7079-84. The studies used by Dr. Rybicki focused on PAH exposure and prostate cancer. This is because petroleum worker studies "generally also include work in various job classifications many of which have little if any

24

direct contact with petroleum products diluting the effects of any potential petroleum exposures across the study population." ROA.7145. Further, Dr. Rybicki reviewed a meta-analysis published by industry-funded authors, which evaluated a cohort of petroleum workers and identified a statistically significant positive association amongst prostate cancer where all other cancers had a negative or null association. ROA.7080. Further, Dr. Rybicki cited numerous mechanistic studies, many of which he himself published, showing that exposure to PAH's caused harm to individual's DNA adducts, thereby proving biological plausibility. Dr. Rybicki also considered studies on previous oil spills, including one which demonstrated an increased incidence of prostate cancer in the community where the oil spill occurred. ROA.7080. Dr. Rybicki's general causation opinion was formed based on a review of the universe of applicable and reliable toxicological and epidemiologic studies related to the safe levels of exposure and the connection to cancer risk. ROA.7146.

A Plaintiff must also prove specific causation, which Dr. Rybicki did through differential etiology and the evaluation of Ruffin's genetic testing. The results of this testing found that Ruffin's genetic predisposition led to a lower tolerance for PAHs compared to other individuals, making him more susceptible to environmentally-induced prostate cancer. ROA.7093. Dr. Rybicki stated that Ruffin's intense exposure during his short time as a Clean-Up worker could have increased Ruffin's risk for prostate cancer. Dr. Rybicki's opinions were confirmed by Dr. Clark, a

companion expert toxicologist who BP did not move to exclude (and therefore his does values are unchallenged), who used cancer slope factors to conduct an exposure assessment to calculate Ruffin's cancer risk. ROA.7081, 7165.  Based on the foregoing, Dr. Rybicki's opinions are clearly sufficient to meet Ruffin's "featherweight" standard of proof in this case, and as such he was erroneously excluded.

Despite Ruffin's arguments in favor of the "featherweight" standard, the District Court did not apply it. ROA.7053-56. In fact, the District Court made no mention of the "featherweight" standard at any point in its opinion despite it being an issue of first impression and its application disputed amongst the parties. ROA.10404, 10406.  For all these reasons, the District Court's failure to apply the "featherweight" standard to Ruffin's claims under general maritime law was an abuse of discretion.

### B. The District Court should have applied a lenient standard in the interest of equity.

Because of this case's complexity, specifically the mixture and additive effects of different toxicants in crude oil and COREXIT, coupled with the uncertain chemical concentrations of exposure due to flawed or incomplete monitoring data on the part of BP, the District Court should have provided more flexible consideration of the available studies, as did the First Circuit in *Milward*. Instead, the District Court applied a rigid causation standard to exclude Dr. Rybicki that

required him to identify mathematically calculated dosage identifications that Dr. Rybicki testifies are "impossible" to identify with the data available. ROA.7086, 7141.

The District Court stressed that the stringent standards of the Fifth Circuit were at odds with other circuits, namely the First Circuit. During oral argument, the District Court noted that leniency is the "most novel argument" in this case where Ruffin holds that the strict standards of the Fifth Circuit essentially requests that a plaintiff provide evidence of what is essentially a scientific impossibility. ROA.10575. The dissent in *Moore v. Ashland Chemical*, joined by three Circuit Court judges, forewarned of the of the wide "lethal swath" that could result from the seemingly non-controversial rule requiring toxic tort experts proffer "scientific knowledge" regarding the harmful level of exposure. Quoting the Federal Reference Manual on Scientific Evidence, the dissenting judges stated "Only rarely are humans exposed to chemicals in a manner that permits a quantitative determination of adverse outcomes. Human exposure occurs most frequently in occupational settings where workers are exposed to industrial chemicals like lead or asbestos; however, even under these circumstances, it is usually difficult, if not impossible, to quantify the amount of exposure." *Moore v. Ashland Chem. Inc*., 151 F.3d 269, 287-288 (5th Cir. 1998) (J. Dennis, J. Parker, J. Stewart dissenting) (quoting Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, p. 187 (1994))

27

Where ephemeral exposure data is not available or reliable, or where there are few studies directly evaluating oil-spill clean-up workers and prostate cancer incidence, such is the case with the present oil spill exposures, Plaintiffs are unable to have their case heard before a jury because of the impossible standard set for expert admissibility. The BP Defendants agree the standard is impossible: "It's an exercise in futility. The science isn't there yet." ROA.10573. The District Court echoed futility: "That's the core problem because even though I know he says that [identifying a specific dosage is impossible], that can't be done and he didn't do it, the Fifth Circuit says, it needs to be done. What am I to do in view of that precedent?" ROA.10556-57.

With the District Courts being appointed the role of gatekeeper with wide discretion, it should be the opportunity to apply discretionary leniency where there are scientific impossibilities regarding causation methodology. Such an application of principles of leniency and fairness in this general maritime toxic tort would also be consistent with the thrust of *Daubert* and precent from this Court which holds that "the reliability inquiry under Daubert is a flexible one, permitting the district court to identify the most germane considerations." *Roman v. W. Mfg., Inc*., 691 F.3d 686, 692 (5th Cir. 2012) (citing *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)).

## V. THE DISTRICT COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT AND DISMISSED RUFFIN'S CASE.

As stated above, the District Court erred in excluding Ruffin's expert epidemiologist Dr. Rybicki. As a result of this expert causation testimony being excluded, the District Court dismissed Ruffin's claims in their entirety on the basis of lack of evidence of the essential element of causation.

The District Court's erroneous exclusion of Ruffin's causation expert was crucial to the dismissal of Ruffin's claims. Without an expert, Ruffin could not prove the central issue in this litigation—the level, extent, and duration of his exposure to harmful substances during the relevant times of the Oil Spill.

Because the District Court improperly excluded Ruffin's expert witness testimony regarding causation, it found Ruffin was unable to provide any evidence as to the essential element of causation. Had the District Court not excluded Dr. Rybicki, Ruffin would have been able to present testimony regarding causation to the trier of fact. This testimony would have allowed Ruffin to demonstrate that there was a genuine issue of material fact, defeating summary judgment, as he would have expert epidemiologist testimony to present to the jury for it to make the determination of causation based on their weighing of the evidence and evaluating the credibility of the witness through his demeanor at trial. As such, this Court should reverse the summary judgment.

29

## CONCLUSION

This Court should reverse the Judgment dismissing Ruffin's claims against the BP Defendants.  The District Court improperly excluded Dr. Rybicki. The District Court erroneously applied an insurmountable and arbitrary standard regarding Dr. Rybicki's expert opinion on the required level of exposure—a standard in direct conflict with those applied in other circuits—and instead should have applied the "featherweight" standard in uniformity with general maritime law.

As a result of the District Court's improper exclusion of this testimony, the District Court also erred when it issued Summary Judgment dismissing Ruffin's case in its entirety.  This Court should reverse the District Court's Judgment excluding Dr. Rybicki and granting Summary Judgment.

Respectfully submitted,

*S/ Martha Y. Curtis*

_____

MARTHA Y. CURTIS (#20446)
HANNAH L. BREWTON (#40178)
**SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 3800
New Orleans, Louisiana 70112-4046
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

**ATTORNEYS OF RECORD
FOR APPELLANT FLOYD RUFFIN**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing instrument has been served via the Court's

ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of

Appellate Procedure, on April 3, 2023, on all registered counsel of record, and has

been transmitted to the Clerk of the Court.

*S/ Martha Y. Curtis*

_____

**MARTHA Y. CURTIS**
**ATTORNEY OF RECORD FOR**
**FLOYD RUFFIN**

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,820 words as determined by the word-count function of Microsoft Word 2013, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman font, 14-point type face.

*S/ Martha Y. Curtis*

_____

**MARTHA Y. CURTIS**
**ATTORNEY OF RECORD FOR**
**FLOYD RUFFIN**

## <u>CERTIFICATE OF ELECTRONIC COMPLIANCE</u>

I hereby certify that (1) the required privacy redactions, if any, have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.; and (3) the document has been scanned and is free of viruses.

*S/ Martha Y. Curtis*

_____

**MARTHA Y. CURTIS**
**ATTORNEY OF RECORD FOR**
**FLOYD RUFFIN**