# In the United States Court of Appeals for the Fifth Circuit

## No. 23-30854

FLOYD RUFFIN,

PLAINTIFF-APPELLANT,

v.

BP EXPLORATION & PRODUCTION INCORPORATED; BP AMERICA PRODUCTION COMPANY,

DEFENDANTS-APPELLEES

On Appeal from the U.S. District Court
for the Eastern District of Louisiana
Case No. 2:20-CV-334.

## APPELLEES' BRIEF

Adam J. Jagadich
MARON MARVEL BRADLEY
ANDERSON & TARDY LLC
191 N. Wacker Dr.
Chicago, IL 60606
Telephone: (312) 579-2012

George W. Hicks, Jr.
Rex W. Manning
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

*Counsel for Appellees*

June 17, 2024

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

**APPELLEES:**

Appellees are BP Exploration & Production Inc., and BP America Production Co.

**ATTORNEYS FOR APPELLEES:**

Adam J. Jagadich
Maron Marvel Bradley
Anderson & Tardy LLC
191 N. Wacker Dr.
Chicago, IL 60606
(312) 579-2012

Elizabeth S. Wheeler T.A.
R. Keith Jarrett
Charles B. Wilmore
Devin C. Reid
Jonathon J. Fox
George G. Rochelle III
Alec N. Andrade
Liskow & Lewis
701 Poydras Street, Suite 5000
New Orleans, LA  70139
(504) 581-7979

George W. Hicks, Jr.
Rex W. Manning
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 389-5000

i

**APPELLANT:**

Appellant is Floyd Ruffin

**ATTORNEYS FOR APPELLANT:**

Martha Y. Curtis
Hannah L. Brewton
Sher Garner Cahill Richter
Klein & Hilbert LLC
909 Poydras Street, Suite 2800
New Orleans, LA 70112
(504) 299-2100

Richard J. Diaz
Richard J. Diaz, PA
3127 Ponce De Leon Blvd
Coral Gables, FL 33134
(305) 444-8178

Charles D. Durkee
Downs Law Group, PA
3250 Mary Street, Suite 307
Coconut Grove, FL 33133
(305) 444-8226

<u>s/ *George W. Hicks, Jr.*</u>
Counsel for Appellees

## STATEMENT REGARDING ORAL ARGUMENT

The district court granted summary judgment to Appellees BP Exploration & Production Inc. and BP America Production Co. (collectively, "BP") because Appellant Floyd Ruffin failed to offer admissible general-causation and specific-causation expert testimony. Ruffin appeals the district court's decision, but each of the issues he raises is foreclosed by this Court's precedents, subject to deferential abuse-of-discretion review, or both. In BP's view, therefore, oral argument is unnecessary. Nevertheless, because oral argument may help the Court understand the various misstatements of the law and record in Ruffin's briefing, BP does not oppose oral argument should this Court deem it helpful.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

STATEMENT REGARDING ORAL ARGUMENT .......................................... iii

TABLE OF AUTHORITIES ............................... **Error! Bookmark not defined.**

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION .......................................................................3

STATEMENT OF ISSUES ....................................................................................3

STATEMENT OF THE CASE AND FACTS .......................................................4

     A.    The Deepwater Horizon Oil Spill and Response......................4

     B.    The MSA and BELO Litigation ..................................................5

     C.    Proceedings Below .....................................................................10

SUMMARY OF ARGUMENT ............................................................................19

STANDARD OF REVIEW ..................................................................................24

ARGUMENT .......................................................................................................25

I.    Judge Lemelle Did Not Abuse His Discretion By Excluding Rybicki's General-Causation Opinion. ....................................................25

     A.    Rybicki Failed to Identify the Harmful Level of Exposure to a Chemical That Can Cause Prostate Cancer. ..........................................................................................26

     B.    Rybicki's Testimony Reflected an Analytical Gap Between the Data and His Opinion. .........................................31

     C.    Ruffin's Counterarguments Are Unpersuasive......................33

II.    Judge  Lemelle  Did  Not  Abuse  His  Discretion  By Excluding Rybicki's Specific-Causation Opinion. .................................54

      A.    Rybicki Failed to Determine Ruffin's Dose of Exposure. ...........................................................................................55

      B.    Rybicki Unreliably Attempted a Differential Etiology..........59

      C.    Ruffin's Counterarguments Are Unpersuasive......................62

III.    Judge Lemelle Correctly Granted Summary Judgment For BP...........64

CONCLUSION .................................................................................................64

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Pa. Eng'g Corp.,*
   102 F.3d 194 (5th Cir. 1996)......................................................*passim*

*Barrington v. BP Expl. & Prod., Inc.,*
   2024 WL 400191 (5th Cir. Feb. 2, 2024)..................................*passim*

*In re Bonvillian Marine Serv., Inc.,*
   19 F.4th 787 (5th Cir. 2021)...............................................................42

*Braggs v. BP Expl. & Prod., Inc.,*
   2024 WL 863356 (5th Cir. Feb. 29, 2024)................................*passim*

*Burleson v. Texas Dep't of Crim. Just.,*
   393 F.3d 577 (5th Cir. 2004)......................................................28, 29

*Byrd v. BP Expl. & Prod., Inc.,*
   2023 WL 4046280 (5th Cir. June 16, 2023)..............................*passim*

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986).............................................................................25

*Christophersen v. Allied-Signal Corp.,*
   939 F.2d 1106 (5th Cir. 1991).............................................................57

*Cinel v. Connick,*
   15 F.3d 1338 (5th Cir. 1994)...............................................................36

*In re Cooper/T. Smith,*
   929 F.2d 1073 (5th Cir. 1991).............................................................49

*Ctr. For Biological Diversity, Inc. v. BP Am. Prod. Co.,*
   704 F.3d 413 (5th Cir. 2013)........................................................4, 52

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) .................................................................................*passim*

*In re Deepwater Horizon*,
  745 F.3d 157 (5th Cir. 2014) ..................................................................3

*In re Deepwater Horizon BELO Cases*,
  2020 WL 6689212 (N.D. Fla. Nov. 4, 2020)..........................................4, 7, 53

*In re Deepwater Horizon BELO Cases*,
  2022 WL 104243 (11th Cir. Jan. 11, 2022) .................................................9, 40

*In re Deepwater Horizon BELO Cases*,
  2023 WL 2711573 (N.D. Fla. Mar. 30, 2023) ..................................................54

*Del. & Hudson Ry. Co. v. Knoedler Mfrs., Inc.*,
  781 F.3d 656 (3d Cir. 2015) ................................................................48

*Faerber v. BP Expl. & Prod., Inc.*,
  2022 WL 2340560 (5th Cir. June 29, 2022) .....................................................9

*Fairley v. BP Expl. & Prod., Inc.*,
  2022 WL 16731817 (E.D. La. Nov. 3, 2022) ................................................52

*Hendrix ex rel. G.P. v. Evenflo Co.*,
  609 F.3d 1183 (11th Cir. 2010) ..................................................................54, 59

*Gass v. Marriott Hotel Services, Inc.*,
  558 F.3d 419 (6th Cir. 2009) ...........................................................47

*Gautreaux v. Scurlock Marine, Inc.*,
  107 F.3d 331 (5th Cir. 1997) (en banc)..........................................................48

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)..................................................................................26, 32

*Guy v. Crown Equip. Corp.*,
  394 F.3d 320 (5th Cir. 2004)...............................................................24, 26

*Harrison v. BP Exploration & Production Inc.*,
  2022 WL 2390733 (E.D. La. July 1, 2022) .......................................36

*Hollander v. Sandoz Pharm. Corp.*,
  289 F.3d 1193 (10th Cir. 2002) ........................................................54

*Hopkins v. Ogg*,
  783 F.App'x 350 (5th Cir. 2019) ......................................................62

*Johnson v. Arkema, Inc.*,
  685 F.3d 452 (5th Cir. 2012)...............................................28, 38, 60

*Knight v. Kirby Inland Marine Inc.*,
  482 F.3d 347 (5th Cir. 2007).......................................................*passim*

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999)...........................................................................52

*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994)............................................................25

*Maas v. BP Exploration & Production, Inc.*,
  576 F.Supp.3d 564 (M.D. Tenn. 2021)............................................47

*Macy v. Whirlpool Corp.*,
  613 F.App'x 340 (5th Cir. 2015) ......................................................54

*McGill v. BP Expl. & Prod., Inc.*,
  830 F.App'x 430 (5th Cir. 2020) .................................................*passim*

*Milward v. Acuity Specialty Products Group, Inc.*,
  639 F.3d 11 (1st Cir. 2011) .......................................................43, 44

*Moore v. Ashland Chem. Inc.*,
  151 F.3d 269 (5th Cir. 1998)............................................................26

*In re Paoli R.R. Yard PCB Litigation*,
  35 F.3d 717 (3d Cir. 1994) ..............................................................45

*Peairs v. BP Expl. & Prod., Inc.,*
   2022 WL 2817852 (E.D. La. July 19, 2022) ....................................53

*Pipitone v. Biomatrix, Inc.,*
   288 F.3d 239 (5th Cir. 2002).........................................................26

*Porte v. Illinois Central Railroad Co.,*
   2018 WL 4404063 (E.D. La. Sept. 14, 2018) ...........................46, 47

*Prest v. BP Expl. & Prod., Inc.,*
   2023 WL 6518116 (5th Cir. Oct. 5, 2023)...............................*passim*

*Rogers v. Bromac Title Servs., L.L.C.,*
   755 F.3d 347 (5th Cir. 2014)..........................................................24

*Roman v. W. Mfg., Inc.,*
   691 F.3d 686 (5th Cir. 2012)..........................................................51

*Rosen v. Ciba–Geigy Corp.,*
   78 F.3d 316 (7th Cir. 1996)............................................................54

*Roy v. City of Monroe,*
   950 F.3d 245 (5th Cir. 2020)..........................................................38

*Sanchez v. Smart Fabricators of Tex., LLC,*
   952 F.3d 620 (5th Cir. 2020)..........................................................48

*Schindler v. Dravo Basic Materials Co. Inc.,*
   790 F.App'x 621 (5th Cir. 2019) .......................................27, 50, 64

*Seaman v. Seacor Marine L.L.C.,*
   326 F.App'x 721 (5th Cir. 2009) .............................................*passim*

*Sims v. Kia Motors of Am., Inc.,*
   839 F.3d 393 (5th Cir. 2016)..........................................................13

*Street v. BP Expl. & Prod., Inc.,*
   85 F.4th 266 (5th Cir. 2023)...........................................................10

*Tamraz v. Lincoln Elec. Co.,*
    620 F.3d 665 (6th Cir. 2010)...........................................................54

*Turner v. Iowa Fire Equip. Co.,*
    229 F.3d 1202 (8th Cir. 2000).................................................45, 46

*Wells v. SmithKline Beecham Corp.,*
    601 F.3d 375 (5th Cir. 2010)...........................................................54

*Westberry v. Gislaved Gummi AB,*
    178 F.3d 257 (4th Cir. 1999)............................................45, 46, 60

*Williams v. Manitowoc Cranes, L.L.C.,*
    898 F.3d 607 (5th Cir. 2018).........................................24, 31, 39, 41

*Wills v. Amerada Hess Corp.,*
    379 F.3d 32 (2d Cir. 2004).............................................................50

**Statutes**

28 U.S.C. §1291..................................................................................3

28 U.S.C. §1331..................................................................................3

33 U.S.C. §1321................................................................................52

33 U.S.C. §2717..................................................................................3

46 U.S.C. §30101................................................................................3

Federal Employers' Liability Act (45 U.S.C. §51)................................21, 48, 50

Jones Act (46 U.S.C. §30104)...........................................21, 48, 49, 50

**Rules**

Federal Rule of Evidence 702 ...................................................*passim*

**Other Sources**

Michael D. Green, *et al.*, *Reference Guide on Epidemiology*,
    *Reference Manual on Scientific Evidence* 608 (Fed. Jud. Ctr. 3d
    ed. 2011) ......................................................................................................11

## INTRODUCTION

As part of the *Deepwater Horizon* Medical Settlement, class members who allege latent injuries may sue BP in "BELO" litigation, named for the settlement's "Back-End Litigation Option."  As is true whenever a plaintiff alleges injury from exposure to allegedly harmful substances, BELO plaintiffs must offer expert evidence satisfying "minimal" requirements, including identifying "the harmful level of exposure to a chemical" that can cause the alleged condition in the general population.  *Byrd v. BP Expl. & Prod., Inc.*, 2023 WL 4046280, at *2 (5th Cir. June 16, 2023) (quoting *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)).

Appellant Floyd Ruffin contends that his exposure to substances associated with the *Deepwater Horizon* spill caused him to develop prostate cancer.  Yet his causation expert concededly never identified a "harmful level of exposure to a chemical" that can cause prostate cancer in the general population.  By itself, this admitted failure to satisfy the Court's "minimal" requirement for general causation requires exclusion of Ruffin's expert opinion and entitles BP to summary judgment.

But Ruffin's expert's opinions were improper for three other reasons as well.  The expert's general-causation opinion also did not comply with the

1

reliability standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because there was a vast analytical gap between the data the expert invoked and the conclusion he reached.  The expert also failed to identify Ruffin's dose of exposure, a basic fact this Court requires to establish specific causation.   Finally, the expert's attempt to eliminate possible alternative causes for Ruffin's prostate cancer, another specific-causation requirement, was fatally flawed.

The district court held that Ruffin's expert testimony was inadmissible for each of these four independent reasons.  None of those determinations was erroneous, much less an abuse of discretion—the stringent standard that Ruffin must satisfy.  Indeed, to obtain reversal, Ruffin must show that *each* of the district court's four rationales for excluding the expert causation opinion was an abuse of discretion.  Ruffin does not come close to doing so. To the contrary, he essentially concedes that his expert did not satisfy this Court's precedent.  Instead, he largely disregards those decisions, raises an illusory and inapposite circuit split, invokes an irrelevant causation standard, and all but ignores the district court's analysis.  None of these arguments provides any basis for disturbing the district court's well-reasoned judgment.  This Court should affirm.

## STATEMENT OF JURISDICTION

Jurisdiction exists over litigation arising out of the *Deepwater Horizon* oil spill under 28 U.S.C. §1331, 33 U.S.C. §2717(b), and 46 U.S.C. §30101. *See, e.g.*, *In re Deepwater Horizon*, 745 F.3d 157, 162-64 (5th Cir. 2014).

In 2012, BP and Class Counsel entered into the Medical Settlement Agreement ("MSA"). For conditions diagnosed after April 16, 2012, the MSA provides for BELO litigation in district court. ROA.92-93.

This BELO case proceeded before Judge Ivan L. R. Lemelle of the Eastern District of Louisiana. After concluding that Ruffin's causation expert's testimony was inadmissible under *Daubert*, Judge Lemelle granted summary judgment for BP. ROA.10404, 10406-10414, 10415. Ruffin timely appealed. This Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF ISSUES

1. Whether Judge Lemelle properly excluded Ruffin's causation expert's general-causation opinion because it fails this Court's general-causation requirements for multiple, independent reasons.

2. Whether, alternatively, Judge Lemelle properly excluded Ruffin's causation expert's specific-causation opinion because it fails this Court's specific-causation requirements for multiple, independent reasons.

3. Whether Judge Lemelle properly granted summary judgment for BP following Ruffin's failure to offer admissible expert evidence of causation.

## STATEMENT OF THE CASE AND FACTS

### A.    The Deepwater Horizon Oil Spill and Response

The *Deepwater Horizon* was an offshore-drilling unit owned by Transocean that BP hired to drill the Macondo Well in the Gulf of Mexico. On April 20, 2010, the *Deepwater Horizon* suffered a blowout, causing an oil spill. *Ctr. For Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 418-20 (5th Cir. 2013). Within days, the federal government—acting through the Unified Area Command and the Federal On-Scene Coordinator—began responding to the spill. *Id.* at 418.

The federal government used various tools during the response, including dispersants. *See, e.g.*, *McGill v. BP Expl. & Prod., Inc.*, 830 F.App'x 430, 431 (5th Cir. 2020). These EPA-approved substances were used "to break up the spilled oil" so that natural processes could more easily disperse the oil. *Id.* Federal officials also collected large amounts of exposure data. *See, e.g.*, *In re Deepwater Horizon BELO Cases*, 2020 WL 6689212, at *4-5 (N.D. Fla. Nov. 4, 2020) (government "engaged in extensive and coordinated data

collection," resulting in "[a] massive quantity of high-quality environmental data"), *aff'd*, 2022 WL 104243 (11th Cir. Jan. 11, 2022).[1]

## B.   The MSA and BELO Litigation

**1.** The *Deepwater Horizon* accident prompted an extraordinary volume of litigation, including—as relevant here—claims alleging personal injuries by individuals who participated in the spill response.  The Judicial Panel on Multidistrict Litigation assigned Judge Carl Barbier of the Eastern District of Louisiana to oversee the ensuing multi-district litigation.

Under Judge Barbier's supervision, BP and Class Counsel entered two massive class settlements in 2012.  ROA.5824-5914.  One was for economic and property damage; the other, the MSA, was for personal injuries resulting from spill-related exposures.  ROA.5825-5828, 5831-5840.  After a lengthy review, including considering evidence offered by BP, Class Counsel, and

---

[1] Ruffin's statement of the case includes many unsupported allegations.  For example, Ruffin characterizes the dispersants used by the federal government as "highly noxious," Br.5, even though this Court has already affirmed summary judgment to BP where a BELO plaintiff failed to demonstrate that these dispersants are harmful.  *See McGill*, 830 F.App'x at 433.  Almost all of Ruffin's citations, moreover, are to his own complaint rather than the summary judgment record.  *See* Br.4-6.

various objectors about whether the settlements' proposed terms were fair, Judge Barbier approved both settlements.  ROA.5824.

Members of the MSA Settlement Class received many benefits, two of which are relevant here.  First, the MSA permitted class members who experienced a "Specified Physical Condition" shortly after the spill to submit a claim for fixed compensation according to a Specified Physical Conditions Matrix.  *See, e.g.*, ROA.5666.  Class members who received payment under the SPC Matrix were not required to prove that the *Deepwater Horizon* spill caused their alleged condition.

Second, the MSA establishes "BELO" litigation for class members who allege "Later-Manifested Physical Conditions" ("LMPCs").  ROA.5682.  An LMPC is a condition diagnosed after April 16, 2012, allegedly resulting from exposure to "oil, other hydrocarbons, or other substances released from" the spill or to "dispersants and/or decontaminants used in connection with" response activities.  ROA.5642-5643.  A BELO plaintiff does not receive fixed compensation but must file a notice of intent to sue.  ROA.5682.  BP then receives the option to mediate any claim for which a BELO plaintiff submits such a notice.  ROA.5683.  If mediation fails, the plaintiff may sue in the Eastern District of Louisiana, which can transfer the case "to a more

6

appropriate venue for discovery and trial." *In re Deepwater Horizon BELO Cases*, 2020 WL 6689212, at *6; *see also* ROA.5688-5689.

The MSA specifies how a BELO lawsuit must be litigated, including what damages are recoverable and what a BELO plaintiff must prove. Relevant here, Section VIII of the MSA streamlines BELO litigation by defining the issues to be addressed at trial.  ROA.5682-5695.  For instance, a BELO plaintiff need not prove BP's fault for the oil spill itself or that he or she was exposed to oil, dispersants, or decontaminants.  A BELO plaintiff must, however, establish several other elements, including:

1) "The fact of diagnosis (*i.e.*, whether the [Class Member] was correctly diagnosed with the alleged [LMPC]);

2) "The amount and location of oil, other hydrocarbons, and other substances released from [the spill], and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;

3) "The level and duration of the [Class Member's] exposure to oil, other hydrocarbons, and other substances released from [the spill], and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;

4) "Whether the [Class Member's] alleged [LMPC] was legally caused by his or her exposure to oil, other hydrocarbons, and other substances released from [the spill], and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES;

5) "Whether there exist any alternative causes for the [Class Member's] alleged [LMPC], including, but not limited to, exposure to other substances or sources of contaminants and/or toxins; and

6) "The amount, if any, of compensatory damages to which the [Class Member] is entitled."

ROA.5691-5692.  BELO plaintiffs thus must prove the existence of an injury, the amount and location of exposure, the level and duration of that exposure, and that their condition was "legally caused by" exposure to the substance. ROA.5692.

**2.**  Legal causation for an exposure-based claim requires plaintiffs to prove general and specific causation with admissible expert testimony. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).  "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury."  *Id*.  Accordingly, "[s]cientific knowledge of the harmful level of exposure to a chemical"—*i.e.*, general causation—"plus knowledge that the plaintiff was exposed to such quantities"—*i.e.*, specific causation—are "minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."  *Allen*, 102 F.3d at 198-99.

Applying these principles to BELO litigation, this Court has twice held that BP is entitled to summary judgment when a BELO plaintiff lacks admissible expert causation testimony. *See Faerber v. BP Expl. & Prod., Inc.*, 2022 WL 2340560, at *1 (5th Cir. June 29, 2022) (affirming summary judgment when BELO plaintiff failed to produce expert causation testimony); *McGill*, 830 F.App'x at 431 (affirming summary judgment when BELO plaintiff proffered inadmissible expert causation testimony). Similarly, the Eleventh Circuit has affirmed summary judgment for BP in a bellwether proceeding when BELO plaintiffs failed to proffer admissible general-causation expert testimony, because "[i]n a toxic-tort case like this one, a plaintiff must establish both general and specific causation through admissible, reliable expert testimony." *In re Deepwater Horizon BELO Cases*, 2022 WL 104243, at *2 (11th Cir. Jan. 11, 2022).

This Court has also repeatedly reached the same conclusion in recent cases involving *Deepwater Horizon* plaintiffs who opted out of the MSA and pursued ordinary toxic-tort litigation, and who must also offer admissible causation expert testimony. *See, e.g., Braggs v. BP Expl. & Prod., Inc.*, 2024 WL 863356, at *1 (5th Cir. Feb. 29, 2024) (affirming summary judgment for BP after upholding exclusion of general-causation expert); *Barrington v. BP Expl.*

*& Prod., Inc.*, 2024 WL 400191, at *1 (5th Cir. Feb. 2, 2024) (same); *Prest v. BP Expl. & Prod., Inc.*, 2023 WL 6518116, at *1 (5th Cir. Oct. 5, 2023) (same); *Byrd*, 2023 WL 4046280, at *1 (affirming summary judgment for BP given absence of admissible general-causation testimony); *see also Street v. BP Expl. & Prod., Inc.*, 85 F.4th 266, 268, 272-73 (5th Cir. 2023) (holding that failure to offer admissible expert general-causation testimony rendered "harmless" judge's alleged failure to disqualify himself).

### C.  Proceedings Below

**1.**  Ruffin participated in response efforts by cleaning up debris from the shoreline and by deploying, recovering, and cleaning oil booms (floating physical barriers).  ROA.841.  In 2012, he chose not to opt out of the MSA class and thus became bound by its terms.  ROA.10683.  Eight years later, Ruffin filed a BELO lawsuit against BP in the Eastern District of Louisiana, alleging that he was exposed to oil, dispersants, and other substances and that he developed prostate cancer because of that exposure.  ROA.33.  Ruffin's case started in Judge Barbier's court and was then reassigned to Judge Lemelle.  ROA.10.

**2.**  The parties engaged in extensive discovery.  Ruffin purported to designate 12 experts, ROA.781-786, but just one is relevant here:

Dr. Benjamin Rybicki, Ruffin's causation expert. Rybicki wrote an initial report, ROA.3033, and submitted a supplemental declaration, ROA.7140. He was also deposed. ROA.2813.

Rybicki is not a medical doctor, a toxicologist, or an industrial hygienist. ROA.2840, 2842. Instead, he is a "genetic and molecular epidemiologist." ROA.3033. The field of epidemiology studies populations, not individual people. ROA.2839. It therefore "do[es] not address the question of the cause of an individual's disease." Michael D. Greene, *et al.*, *Reference Guide on Epidemiology, Reference Manual on Scientific Evidence* 608 (Fed. Jud. Ctr. 3d ed. 2011). Before Ruffin's case, Rybicki had never written an expert report and had never been qualified as an expert witness. ROA.2820-2821. When preparing his report, Rybicki did not speak to Ruffin or consult other experts. ROA.2823-2824. Rather, despite holding no medical license and considering himself unqualified to offer expert medical opinions, ROA.2840, Rybicki reviewed Ruffin's medical records, ROA.2826.

To form an opinion on general causation—that is, whether a particular chemical *can* cause prostate cancer—Rybicki investigated whether there was a causal connection between exposure to polycyclic aromatic hydrocarbons, called "PAHs," and prostate cancer. ROA.2830. PAHs are a class of organic

compounds consisting of more than 200 chemicals, and they are so common that Rybicki describes them as "ubiquitous." ROA.3041. He also acknowledges that "[w]e all have some level of exposure" to them. ROA.2866. They occur naturally in coal, peat, crude oil, and shale oil, can also be found in grilled meats, leafy vegetables, and grains, and appear in various occupational settings as well. ROA.3041.

The International Agency for Research on Cancer has investigated PAHs and has not found an association with prostate cancer. ROA.2876. Rybicki nevertheless opined that such an association exists. To form that opinion, he consulted "experimental and epidemiologic scientific literature." ROA.3041. After finding a supposed association, Rybicki applied the Bradford Hill criteria to evaluate whether the association reflected a cause-and-effect relationship. ROA.2829. Rybicki concluded that it did. ROA.3050; ROA.2829-2830. It was the first time in his career that he reached that conclusion, ROA.2832-2833, but he did not present it to any colleagues for peer review, ROA.2827.

Rybicki also opined on specific causation—that is, whether exposure to PAHs caused *Ruffin's* prostate cancer. To form that opinion, Rybicki purported to perform a differential etiology, which is "a scientific technique

that essentially involves the process of elimination… , 'the results of [which] are far from reliable *per se*.'" *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 401 (5th Cir. 2016). Using this technique, Rybicki concluded that Ruffin's exposure to PAHs during his spill-response work caused his prostate cancer. ROA.3058. It was the first time Rybicki had performed a differential etiology or had issued a specific-causation opinion. ROA.2835, 2976, 2995.

**3.** BP moved to exclude Rybicki's general-causation and specific-causation opinions as unreliable and unhelpful under *Daubert*, Federal Rule of Evidence 702, and this Court's toxic-tort precedents. ROA.2784. Both opinions suffered from many shortcomings, ROA.2795, but BP emphasized two fundamental flaws in each opinion. ROA.2795, 2800.

On general causation, BP first argued that Rybicki never identified the level of exposure of PAHs that can cause prostate cancer in the general population, which is one of two "minimal facts" necessary for Ruffin to sustain his burden of proof on causation. ROA.2795 (citing *Allen*, 102 F.3d at 198-99). BP also contended that Rybicki had cherry-picked irrelevant epidemiological studies to find an association between PAHs and prostate cancer. ROA.2796-2799. He did so, BP explained, by choosing studies of automotive-industry workers, chimney sweeps, and workers with

13

exposures to coal or wood, while ignoring studies of petroleum-industry and spill-response workers, which did *not* identify an association between occupational exposure to petroleum products and prostate cancer. ROA.2796-2799.

On specific causation, BP first pointed out that Rybicki never identified what level of PAHs Ruffin was exposed to—the second of the two "minimal facts" necessary for Ruffin to sustain his burden of proof on causation. ROA.2803 (citing *Seaman v. Seacor Marine L.L.C.*, 326 F.App'x 721, 723 (5th Cir. 2009)). BP also detailed Rybicki's failure, in his attempted differential etiology, to consider Ruffin's longtime work as a truck driver. ROA.2805. Such an omission was critical, BP emphasized, because (a) the studies Rybicki invoked documented an association between truck driving and prostate cancer; (b) Ruffin worked as a truck driver far longer (20 years) than he did on the oil spill (four months); and (c) the latency period for prostate cancer (at least 10-15 years) matched better with the timing of Ruffin's truck driving than with his spill work. ROA.2805-2806.

BP also moved for summary judgment because Ruffin had not proffered admissible expert testimony showing general or specific

14

causation, which left him unable to meet his burden of proof. ROA.3071, ROA.3079.

**4.** After a hearing, Judge Lemelle granted BP's *Daubert* motion and excluded Rybicki's general-causation and specific-causation opinions for each of the foregoing reasons. ROA.10404.

As to general causation, Judge Lemelle noted that this Court "requires a causation expert to identify the harmful level of exposure to a chemical to sustain the plaintiff's burden in [a] toxic tort case." ROA.10632. But Rybicki had not identified a harmful dose and had even admitted as much in his deposition:

> Q. You don't identify any level of exposure that is capable of causing—any level of PAH exposure that is capable of causing prostate cancer in a human?
>
> A. That is true.

ROA.2877 (deposition); ROA.10634 (opinion).

Separately, Judge Lemelle concluded there was "an analytical gap … between the data and the opinions proffered" by Rybicki. ROA.10644. Rybicki had relied on studies involving "automotive industry workers or chimney sweeps," while "acknowledg[ing] that studies of petroleum workers would be more representative of" Ruffin's exposures. ROA.10635.

Such petroleum worker studies, Rybicki himself conceded, "demonstrated no association between petroleum related work exposures and prostate cancer."    ROA.2975 (deposition); ROA.10635 (opinion).    Furthermore, Rybicki relied on a study he characterized as finding "[c]ancer risk due to occupational exposure to [PAHs]," ROA.3064, but in fact found only "a positive association between exposure to PAHs in wood and prostate cancer" and "*no association* between exposure to petroleum and prostate cancer."  ROA.10636 (emphasis added); ROA.2966.  And Rybicki focused on a particular substance found in PAHs, benzo(a)pyrene, but "admitted that that substance has not been shown to cause … prostate cancer," which was significant because "the Fifth Circuit require[s] that experts rely upon epidemiological studies to establish a link with the specific cancer in which the plaintiff suffers and not cancer generally."  ROA.10643.

As to specific causation, Judge Lemelle first noted Rybicki's inexperience, observing that Rybicki admitted he was "not qualified to perform a differential diagnosis," had "never performed" one before, and was offering a specific-causation opinion for the first time.  ROA.10637.  Judge Lemelle then explained that regardless of Rybicki's limited experience, Rybicki "must still identify … the plaintiff's exposure level" to

offer a specific-causation opinion, because this Court has held "that knowledge the plaintiff was exposed to harmful levels of exposure is a second of the two minimal facts necessary to sustain the plaintiff's burden in toxic tort cases like [Ruffin's]."   ROA.10637-10638 (citing *Seaman*, 326 F.App'x at 723).  But, Judge Lemelle held, Rybicki had concededly not met that requirement, stating in his deposition:

> Q. So the truth is, in your report there is no quantitative or mathematical expression of Mr. Ruffin's exposure in this—to PAH or any other chemical?
>
> A. That is correct.
>
> …
>
> Q. Is there any information in your report about Mr. Ruffin's dose of exposure?
>
> A. Not in a quantitative sense, no.

ROA.2978, 2990 (deposition); ROA.10638 (opinion).

Finally, Judge Lemelle criticized Rybicki's differential etiology. Experts must "rule out other potential causes of [a] plaintiff's medical condition on a scientific basis," Judge Lemelle noted, but Rybicki had not done so.  ROA.10640.  Among other things, while "[p]rostate cancer is something that is prevalent and is the subject of many studies," and one

study Rybicki cited "found a statistically significant association between truck driving and prostate cancer," Rybicki had "discounted Mr. Ruffin's extensive truck driving exposure."  ROA.10639.  Rybicki also admitted that prostate cancer, with which Ruffin had been diagnosed in 2015, "is a slow-growing cancer with a latency period anywhere[] between 10 to 15 or 20 years after exposure," which corresponded to Ruffin's truck driving career but not his 2010 spill-response work.  ROA.10639-10640.  Judge Lemelle emphasized that Rybicki had "admitted that in retrospect he should have done more to investigate Mr. Ruffin's truck driving exposures."  ROA.10640 (citing ROA.3005-3006).

**5.**  After Judge Lemelle excluded Rybicki, Ruffin purported to proffer an alternative causation expert, Dr. James Clark.  ROA.10412.  But Clark "provide[d] no general-causation conclusion" and "no specific-causation opinion," Judge Lemelle explained.  ROA.10413-10414.  Clark thus likewise "fail[ed] to provide sufficient causation evidence to sustain [Ruffin's] claim."  ROA.10414.  Given Ruffin's inability to satisfy the causation element of his claim, Judge Lemelle granted BP's motion for summary judgment.  ROA.10414.  This appeal followed.  ROA.10416.

18

## SUMMARY OF ARGUMENT

**I.** Judge Lemelle faithfully applied this Court's *Daubert* and general-causation precedents and correctly excluded Rybicki's general-causation opinion. As this Court has repeatedly held, a plaintiff alleging injury from exposure to a purportedly toxic chemical must offer expert testimony that identifies the level of the chemical that causes the alleged injury in the general population. Rybicki failed this requirement, as he never identified a harmful level of exposure to any chemical that could cause prostate cancer. Indeed, Rybicki admitted as much in his deposition. That fatal flaw alone requires affirmance of the exclusion of Rybicki's general-causation opinion.

But Judge Lemelle excluded Rybicki's general-causation opinion for a second reason, too, concluding that there was an analytical gap between the data and Rybicki's opinion. As Judge Lemelle explained, Rybicki relied on epidemiological studies of exposure that looked nothing like Ruffin's; ignored studies of exposures to petroleum (that showed no association with prostate cancer) despite admitting that such studies are the best comparators to Ruffin's exposure; misstated a study as finding a link between PAHs and prostate cancer when the study actually found no association between petroleum exposure and prostate cancer; and emphasized a particular

PAH—benzo(a)pyrene—that has *not* been shown to cause prostate cancer. Judge Lemelle's careful review of the many deficiencies in Rybicki's methodology and his exclusion of Rybicki's general-causation opinion on this separate ground was not erroneous, much less an abuse of discretion.

Ruffin's arguments to the contrary do not overcome the fundamental shortcomings in Rybicki's opinion. First, Ruffin contends that his expert need not provide a quantifiable level of a chemical that can cause prostate cancer. This Court has rejected that argument in numerous recent cases, however, none of which Ruffin cites. It would have been an abuse of discretion had Judge Lemelle *not* adhered to those recent decisions and instead relieved Rybicki of identifying the level of PAHs (or any chemical) that can cause prostate cancer in the general population.

Second, Ruffin contends that Judge Lemelle exceeded his gatekeeper role in excluding Rybicki's general-causation opinion. But Ruffin provides no specifics—he barely addresses Judge Lemelle's reasoning—and has thus forfeited this argument. Regardless, *Daubert* and its progeny recognize that while a jury must weigh admissible expert testimony, judges must first conclude that expert testimony satisfies certain minimal requirements. Judge Lemelle's thoughtful and lengthy analysis determining that Rybicki's

opinion failed those requirements in numerous respects was not erroneous, much less an abuse of discretion.

Third, Ruffin invokes a supposed circuit split and urges this Court to depart from its precedents. Whatever other courts of appeals have said, however, this Court has consistently required a general-causation expert to identify the harmful level of exposure to a chemical at which the alleged condition manifests. If Ruffin disagrees with this Court's well-established law, he is free to seek rehearing en banc or Supreme Court review. In all events, Ruffin fails to identify an issue on which the circuits are supposedly split, and the decisions he cites from other circuits are not in conflict with this Court's law.

Fourth, Ruffin contends that Judge Lemelle should have applied a "featherweight" causation standard. But that standard applies only in cases brought under the Jones Act or Federal Employers' Liability Act. Furthermore, Ruffin conflates the admissibility of an expert opinion with a plaintiff's burden of proof on causation, which as this Court has explained are two different things. Ruffin's inability to satisfy this Court's *Daubert* requirements for expert evidence in toxic-tort cases renders him unable to satisfy any causation standard.

21

Fifth, Ruffin seeks the application of leniency and equitable principles, invoking this case's supposed complexity and the purported inability to identify a harmful level of a chemical that can cause prostate cancer in the general population given a lack of monitoring data. There is nothing unusually complex about this case, though. And both the federal government and BP extensively monitored the workplace to ensure safe exposure levels for workers. Regardless, this Court has repeatedly explained that general causation does not depend upon sampling from the incident in question, and it has also emphasized that an alleged scientific inability to satisfy general-causation requirements does not relieve a plaintiff of complying with those obligations.

**II.** Although this Court need not confront the issue given the proper exclusion of Rybicki's general-causation opinion, Judge Lemelle correctly excluded Rybicki's specific-causation opinion as well. In toxic-tort cases, a plaintiff must establish his dose of exposure to a toxic chemical. Here, however, Rybicki never did that for Ruffin—which Rybicki again concedes. Rybicki also tried to perform a differential etiology, a process of elimination that requires ruling out potential alternative causes. Yet Rybicki simply declared that there were no other possibilities, even though (a) studies have

found an association between truck driving and prostate cancer; (b) Ruffin drove trucks for 20 years; and (c) the latency period for prostate cancer (at least 10-15 years) matched better with Ruffin's truck driving than with his spill work. Judge Lemelle excluded Rybicki's specific-causation opinion due to both of these shortcomings, and that decision was correct, and certainly not an abuse of discretion.

Ruffin has almost nothing to say about specific causation. Ruffin mentions that Rybicki suggested his exposure was "intense," but an exposure assessment requires the examination of data, which Rybicki did not—and admitted he was unqualified to—perform. Ruffin also passingly suggests that another expert, Dr. Clark, "confirmed" Rybicki's conclusions. But the admissibility of Rybicki's opinions depends on how reliable they are, not whether another expert agreed with him; regardless, Clark expressly disclaimed offering a specific-causation opinion. And Ruffin says absolutely nothing about the flaws in Rybicki's differential analysis. Because Ruffin does not meaningfully address Judge Lemelle's rejection of that analysis or identify any error in it, it is the same as if Ruffin had not appealed at all.

**III.** Finally, Judge Lemelle correctly awarded summary judgment for BP. Ruffin does not contest that he had to establish causation through

admissible expert evidence; he just disagrees with Judge Lemelle's conclusion that he failed to do so (on four independent grounds, no less). BP thus is entitled to summary judgment as a matter of law.

## STANDARD OF REVIEW

This Court reviews the "exclusion of expert testimony for an abuse of discretion," affording the district court "wide latitude in its determination." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 615 (5th Cir. 2018) (quotation marks and brackets omitted). Because "[t]he district court has broad discretion in determining whether to admit expert testimony," this Court "will sustain the ruling unless it is 'manifestly erroneous.'" *McGill*, 830 F.App'x at 432 (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)). "'Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Id.* (quoting *Guy*, 394 F.3d at 325); *see also Braggs*, 2024 WL 863356, at *2.

The Court reviews a grant of summary judgment *de novo*. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is required when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law; it should not be denied based on "metaphysical doubt," "conclusory allegations," or a mere

"scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Barrington*, 2024 WL 400191, at *2.

## ARGUMENT

## I.  Judge Lemelle Did Not Abuse His Discretion By Excluding Rybicki's General-Causation Opinion.

Ruffin contends that Rybicki's general-causation opinion was admissible. Yet Rybicki never identified a harmful exposure level of any chemical that could cause prostate cancer in the general population. By itself, that flaw requires exclusion of Rybicki's opinion. At any rate, Judge Lemelle also excluded Rybicki's opinion because of the "analytical gap between the data and the opinion[] proffered" by Rybicki, evidenced by numerous deficiencies in Rybicki's methodology. Each of these determinations independently supports exclusion of Rybicki's general-causation opinion, and each is correct. At the very least, neither is an abuse of discretion; nothing in Judge Lemelle's careful reasoning "amounts to a

complete disregard of the controlling law." *Guy*, 394 F.3d at 325. Ruffin's arguments to the contrary are uniformly meritless.

### A. Rybicki Failed to Identify the Harmful Level of Exposure to a Chemical That Can Cause Prostate Cancer.

**1.** Federal Rule of Evidence 702 governs the admissibility of expert testimony, and *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Courts must assess "whether the reasoning or methodology underlying [a putative expert's] testimony is scientifically valid and … whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. "[E]xpert testimony is admissible only if it is both relevant and reliable." *Pipitone*, 288 F.3d at 244. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Instead, under *Daubert*, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* The proponent bears the burden of establishing admissibility. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Courts apply "a two-step process in examining the admissibility of causation evidence in toxic tort cases." *Knight*, 482 F.3d at 351. First, a court "must determine whether there is general causation." *Id.* Second, "if it concludes that there is admissible general-causation evidence, the district court must determine whether there is admissible specific-causation evidence." *Id.* Because courts "cannot expect lay fact-finders to understand medical causation," moreover, this Court has held that "expert testimony is … required" for causation. *Seaman*, 326 F.App'x at 723; *see also, e.g., Byrd*, 2023 WL 4046280, at *2 (demanding "*scientific—i.e., expert*—'knowledge'" in "toxic-tort cases" (quoting *Allen*, 102 F.3d at 199)); *Schindler v. Dravo Basic Materials Co. Inc.*, 790 F.App'x 621, 625 (5th Cir. 2019) ("[T]oxic-tort cases … require expert testimony to prove causation.").

General causation is concerned with "'whether a substance is capable of causing a particular injury or condition in the general population.'" *Byrd*, 2023 WL 4046280, at *2 (quoting *Knight*, 482 F.3d at 351). This Court has "frequently addressed what general causation experts … must show when a plaintiff alleges injury from toxic exposure," including in *Deepwater Horizon* cases. *Braggs*, 2024 WL 863356, at *2. Among other things, the expert "must first demonstrate that the chemical at issue is actually capable of

27

harming individuals in the general population." *Id.* (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 469 (5th Cir. 2012)); *see also Byrd*, 2023 WL 4046280, at *2 (general causation requires "expert evidence that specific chemicals can cause specific injuries in the general population"). "In doing so, the expert must identify 'the harmful level of exposure to a chemical'" at which the claimed "physical symptoms manifest." *Braggs*, 2024 WL 863356, at *2 (quoting *Allen*, 102 F.3d at 199); *see also Barrington*, 2024 WL 400191, at *1 (toxic-tort plaintiff "*must* show scientific knowledge of the harmful level of exposure to a chemical to satisfy general causation" (brackets omitted)).

Put differently, a toxic-tort plaintiff's expert "must determine not only whether a chemical can cause certain health effects, but also at what level of exposure those health effects appear." *Braggs*, 2024 WL 863356, at *2. The Court has "described this to be a 'minimal[] fact necessary to sustain the plaintiffs' burden in a toxic tort case.'" *Id.* (quoting *Allen*, 102 F.3d at 199); *accord Byrd*, 2023 WL 4046280, at *2; *Burleson v. Texas Dep't of Crim. Just.*, 393 F.3d 577, 586 (5th Cir. 2004). The Court regularly affirms the exclusion of expert testimony that fails this "fundamental" requirement. *Knight*, 482 F.3d at 352-53; *see also, e.g., Braggs*, 2024 WL 863356, at *3; *Barrington*, 2024 WL 400191, at *2; *McGill*, 830 F.App'x at 433 (affirming exclusion when expert

failed to identify "what exposure level of Corexit is hazardous to humans");
*Seaman*, 326 F.App'x at 726-27 (affirming exclusion when expert "provides no clue regarding what would be a harmful level of Ferox exposure"); *Burleson*, 393 F.3d at 587 (affirming exclusion when expert did not offer "a dose assessment").

**2.** Consistent with the foregoing precedent, Judge Lemelle recognized that "the Fifth Circuit requires a causation expert to identify the harmful level of exposure to a chemical to sustain the plaintiff's burden in [a] toxic tort case." ROA.10632. Judge Lemelle then concluded that Rybicki did not provide such an "exposure dose." ROA.10412. Rybicki even "admitted that he did not identify a quantifiable level of exposure to polycyclic aromatic hydrocarbons ('PAH') capable of causing prostate cancer." ROA.10412.

Judge Lemelle's determination was plainly correct, and certainly not an abuse of discretion. Rybicki never established the level of exposure to any chemical that can cause prostate cancer in the general population. In his general-causation report, Rybicki opined that it is "well established that PAH exposures can result in carcinogenic DNA adducts in humans" and that "most epidemiologic investigations have found an increased risk for PAH exposure, albeit modest in most instances." ROA.3050. He claimed to

29

find "moderate to strong support" for PAH exposure having a causative role in prostate cancer. ROA.3050. And he concluded that "PAHs must be considered a potential prostate cancer risk factor that can be cancer-causing in the occupational setting." ROA.3050 (emphasis omitted).

None of these observations, however, establishes the level of exposure to PAHs that can cause prostate cancer in the general population—much less do they establish the level of exposure to a specific PAH (among the hundreds of chemicals) that can cause prostate cancer. Indeed, as Judge Lemelle found, Rybicki essentially conceded that he did not satisfy this Court's general-causation requirements, as the following exchange from his deposition demonstrates:

> Q. You don't identify any level of exposure that is capable of causing—any level of PAH exposure that is capable of causing prostate cancer in a human?
>
> A. That is true.

ROA.2977. Rybicki thus failed a requirement that this Court has consistently and repeatedly characterized as a "*minimal* fact necessary to sustain the plaintiffs' burden." *Allen*, 102 F.3d at 198-99 (brackets omitted; emphasis added); *accord Braggs*, 2024 WL 863356, at *2; *Barrington*, 2024 WL 400191, at *1; *Byrd*, 2023 WL 4046280, at *2. Because Rybicki admittedly failed to

opine on this minimal fact, Judge Lemelle did not err in excluding his general-causation opinion. At the very least, Judge Lemelle's decision was well within his "broad discretion in deciding whether to admit" Rybicki's testimony and was not "manifestly erroneous," that is, "plain and indisputable" error that "amounts to a complete disregard of the controlling law." *Williams*, 898 F.3d at 615 (quotations omitted).

In short, to offer an admissible general-causation opinion, Rybicki had to identify a harmful level of exposure to a particular chemical that could cause prostate cancer in the general population. He concededly failed to do so. That should be the beginning and the end of this appeal.

## B. Rybicki's Testimony Reflected an Analytical Gap Between the Data and His Opinion.

Even apart from Ruffin's failure to identify the level at which exposure to PAHs can cause prostate cancer in the general population, Judge Lemelle excluded Rybicki's general-causation opinion under *Daubert* because of the "analytical gap … between the data and the opinion[] proffered" by Rybicki. ROA.10644. That determination was likewise correct, and at a minimum was not an abuse of discretion.

Judge Lemelle catalogued the many methodological flaws in Rybicki's analysis. For example, Rybicki relied on studies of "automotive industry workers or chimney sweeps" rather than "studies of exposures that are relevant to the work being performed by BELO plaintiffs." ROA.10635. He offered no "material explanation on how the PAH compounds in his studies compare[]" to the PAHs to which Rybicki believed Ruffin was exposed. ROA.10644; *see also Joiner*, 522 U.S. at 144 (observing that *Daubert* allows exclusion for this reason).

Judge Lemelle also noted that Rybicki admitted that studies of petroleum workers would better represent Ruffin's exposures, and Rybicki conceded that an analysis of such studies "demonstrated no association between petroleum related work exposures and prostate cancer." ROA.10635; *see also* ROA.2975 (Rybicki deposition testimony admitting lack of association). Further, Rybicki relied on a study that he claimed found "[c]ancer risk due to occupational exposure to polycyclic aromatic hydrocarbons," ROA.3064, when in fact the study found *no* association between petroleum exposure and prostate cancer. ROA.10636. And exposure to petroleum, Rybicki admitted, was the "best" comparator to Ruffin's exposure. ROA.2966.

32

Finally, while Rybicki largely focused on PAHs, which include some 200 chemicals, Judge Lemelle even addressed the only individual chemical Rybicki sought to connect to Ruffin's ailment—benzo(a)pyrene—and found Rybicki's analysis flawed in that respect as well. Although benzo(a)pyrene is "a known carcinogenic chemical," Rybicki "admitted that [it] has not been shown to cause … prostate cancer." ROA.10643 (citing ROA.2871). That concession defeated Rybicki's opinion, because experts must "rely upon epidemiological studies to establish a link with the specific cancer in which the plaintiff suffers and not cancer generally." ROA.10643 (citing *Allen*, 102 F.3d at 195-96; *Seaman*, 326 F.App'x at 724).

Judge Lemelle's extensive review of these failings was plainly correct. Indeed, Ruffin says almost nothing about any of them. At the least, Judge Lemelle's careful analysis was not "manifestly erroneous" so as to reflect an abuse of discretion. *McGill*, 830 F.App'x at 432. For this additional reason, exclusion of Rybicki's general-causation opinion was proper.

## C.    Ruffin's Counterarguments Are Unpersuasive.

Rather than confront Judge Lemelle's reasoning, Ruffin offers a variety of scattershot arguments in an attempt to demonstrate error. Each is meritless.

### 1. Ruffin Is Not Relieved of Identifying the Harmful Level of Exposure to a Chemical at Which Prostate Cancer Manifests.

Ruffin barely acknowledges this Court's requirement that a toxic-tort plaintiff's expert "must identify 'the harmful level of exposure to a chemical' at which physical symptoms manifest"—something the Court has repeatedly described as a "minimal fact[] necessary to sustain the plaintiff's burden in a toxic tort case." *Braggs*, 2024 WL 863356, at *2. Indeed, Ruffin does not even cite *Braggs*, *Barrington*, *Prest*, or *Byrd*—four recent decisions in which this Court has applied that principle to uphold exclusion of *Deepwater Horizon* plaintiffs' experts for failure to satisfy that requirement. And he does not acknowledge that Rybicki conceded he never identified any such "harmful level" at which any chemical—much less any of the hundreds of chemicals comprising PAHs—can cause prostate cancer in the general population.

The most that Ruffin even gestures in the direction of this requirement is to argue that "nowhere in *Allen*"—the case where the principle was first articulated—"does the Court state that there is no causation without the identification of a precise quantifiable dose of exposure." Br.23; *see also* Public.Citizen.Br.18-23. But this argument ignores that, applying *Allen*, the

Court has since consistently held that a general-causation expert must quantify the minimum level of exposure that can cause the plaintiff's alleged condition in the general population.  Indeed, in *Prest*, the plaintiff—like Ruffin here—argued that general causation does not always require a "quantitative exposure assessment."  Br. of Plaintiff-Appellant 35, *Prest v. BP Expl. & Prod., Inc.*, No. 22-30779 (5th Cir. Mar. 31, 2023), Rec. Doc. 69.  The Court disagreed, correctly characterizing Prest's argument as an admission that his experts "failed to offer scientific evidence of the level of exposure to crude oil or dispersant that would cause [Prest's alleged condition] in the general population."  *Prest*, 2023 WL 6518116, at *2.[2]  So too in *Braggs*, where the plaintiff argued that he need not "utilize a quantified exposure for a specific chemical at a specific level."  Appellant's Br. 25, *Braggs v. BP Expl. & Prod., Inc.*, No. 23-30297 (5th Cir. July 20, 2023), Rec. Doc. 44.  Yet this Court held that the expert's "failure to identify the level of exposure capable of causing the alleged injuries renders his opinion unreliable."  *Braggs*, 2024 WL 863356, at *3.  The same result should follow here.

---

[2] While a petition for rehearing is pending in *Prest*, a panel of this Court has already deemed "unavailing" the "argument[] that *Prest* was wrongly decided."  *Barrington*, 2024 WL 400191, at *1 n.1.

Rather than grapple with *Braggs*, *Prest*, or any of the Court's similar decisions, Ruffin quotes dicta from *Harrison v. BP Exploration & Production Inc.*, 2022 WL 2390733 (E.D. La. July 1, 2022), an unpublished district-court decision, that "'courts do not require a mathematically precise table equating levels of exposure with levels of harm.'" Br.13. But *Braggs* and *Prest* dispose of Ruffin's selective reliance on that language. *Harrison*, moreover, excluded the expert evidence at issue. *See Harrison*, 2022 WL 2390733, at *6. Regardless, there is no need to create a "table" or anything like it; this Court's cases require only that an expert identify the minimum amount of a particular chemical necessary to cause a plaintiff's alleged condition in the general population. *Allen*, 102 F.3d at 198-99. The problem for Ruffin is that his expert did not satisfy even that minimal requirement.[3]

---

[3] Ruffin does not contend that there is any meaningful difference between the causation principles applicable in prior *Deepwater Horizon* toxic-tort cases like *Braggs*, *Barrington*, *Prest*, and *Byrd* (so-called "B3" cases by plaintiffs who opted out of the MSA), and in BELO cases like this one (where plaintiffs did not opt out of the MSA). Having failed to raise this argument in his opening brief, Ruffin may not do so for the first time in his reply. *See, e.g.*, *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). Regardless, there are no such differences, given that a BELO plaintiff must establish that his condition was "legally caused by" exposure to a substance, triggering this Court's toxic-tort causation precedent. *See* pp.7-8, *supra*.

In sum, Judge Lemelle applied the correct legal standard. He certainly could not have abused his discretion by *complying* with this Court's precedent, which he recited at length (and Ruffin largely disregards). Indeed, given that precedent, it would have been an abuse of discretion had Judge Lemelle *not* required Rybicki to identify the harmful level of exposure at which PAHs (or, more specifically, a particular PAH) can cause prostate cancer in the general population. *See Braggs*, 2024 WL 863356, at *3 ("While the *Deepwater Horizon* oil spill was a unique environmental catastrophe, the district court would have erred by disregarding [the Court's] toxic tort precedent and creating a new general causation standard."); *Barrington*, 2024 WL 400191, at *2 (explaining that district court "would have erred if it had *not* applied our toxic tort precedent and instead created a new standard"). Judge Lemelle faithfully followed this Court's decisions, and his exclusion of Rybicki's general-causation opinion on this ground was plainly correct.

### 2.    Judge Lemelle Did Not Overstep His Gatekeeper Role.

Ruffin hardly addresses any of the numerous flaws in Rybicki's methodology that underlie Judge Lemelle's second reason for excluding his general-causation opinion—that there was "an analytical gap … between the data and the opinions proffered" by Rybicki. ROA.10644. Instead, Ruffin

accuses Judge Lemelle of exceeding his gatekeeping role by "weighing the credibility of his testimony instead of evaluating the admissibility of the testimony." Br.14; *see also id.* at 12-14; Public.Citizen.Br. 23-28 (contending that flaws in data reviewed by Rybicki were "not a valid basis for deeming his general-causation opinion unreliable"). But aside from asserting that "all studies have limitations," Br.14, Ruffin provides no specifics as to how or why Judge Lemelle overstepped his gatekeeper role. By failing to develop this argument, Ruffin has forfeited it. *See Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020).

Regardless, Ruffin's generalized attack ignores the very purpose of *Daubert*. No one disputes that evidence that satisfies *Daubert* should be admitted so that the factfinder can determine what weight to give it. The point of *Daubert*, however, is to ensure that expert evidence satisfies certain minimal requirements. Only *after* an expert "reliably utilizes scientific methods to reach a conclusion" does evidence go to "weight" rather than "admissibility." *Knight*, 482 F.3d at 354. And in assessing whether an expert has done so, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Johnson*, 685 F.3d at 460-61. Given its familiarity with the proffered evidence, moreover,

a court has "wide latitude" to make this determination. *Williams*, 898 F.3d at 615.

Ruffin's general observations about *Daubert*, Br.12-13, are thus beside the point. Although it is within the province of the jury to weigh admissible expert testimony, this Court has explicitly (and repeatedly) held that expert testimony must first satisfy "minimal" requirements to be admissible. *See, e.g.*, *Byrd*, 2023 WL 4046280, at *2 (following *Allen*, 102 F.3d at 198-99). Where an expert cannot do that, exclusion is required, particularly given district courts' "important role as gatekeepers in determining whether to admit expert testimony." *Knight*, 482 F.3d at 355.

Here, Judge Lemelle properly exercised that role in carefully evaluating Rybicki's opinion and concluding that there was too great a gap between the data Rybicki consulted and the conclusion he reached. Among other things, not only did Rybicki rely on studies of workers with PAH exposures that looked nothing like the work Ruffin did, ROA.2975, but he also ignored the results of petroleum-worker studies—even though he conceded that those studies provided the best comparison to Ruffin's exposure, ROA.2966. Rybicki also misstated a study that actually found no association between exposure to petroleum and prostate cancer, and he

admitted that the particular substance on which he focused, benzo(a)pyrene, had not been shown to cause prostate cancer. *Daubert* does not require courts to rubberstamp such unreliable or unhelpful analysis. *See, e.g.*, *McGill*, 830 F.App'x at 434 (affirming exclusion of expert under *Daubert* in BELO litigation); *In re Deepwater Horizon BELO Cases*, 2022 WL 104243, at *3 (same).

Ruffin invokes this Court's decision in *Knight*, Br.13, but that case underscores that Judge Lemelle did not err here, much less abuse his considerable discretion. There, two plaintiffs who worked as tankermen were later diagnosed with cancer, sued their former employers, and retained an expert witness who testified that their condition was caused by exposure to benzene. *Knight*, 482 F.3d at 350. The district court excluded that testimony on *Daubert* grounds, and on appeal, this Court affirmed. *Id*. In so holding, the Court discussed the shortcomings of several studies on which the expert relied. *Id*. at 352-54. The Court acknowledged that "in epidemiology hardly any study is ever conclusive" and it "d[id] not suggest that an expert must back his or her opinion with published studies that unequivocally support his or her conclusions." *Id*. at 354. But, the Court continued, "[d]istrict courts have an important role as gatekeepers in determining whether to admit expert testimony"; they "must carefully

analyze the studies on which experts rely for their opinions before admitting their testimony." *Id*. at 354-55. Judge Lemelle engaged in such careful analysis here and concluded that Rybicki's methodology was too flawed to allow admission of his opinion. That determination was not erroneous, much less so "manifestly erroneous" as to constitute an abuse of discretion. *Williams*, 898 F.3d at 615.

### 3. Any Circuit Split on Applicable Standards is Irrelevant and Illusory.

Ruffin next contends that "[t]here is a circuit split on the application of causation standards for toxic tort cases that fall under admiralty and maritime jurisdiction." Br.14. For any number of reasons, this assertion does not aid Ruffin.

First, of course, regardless of what other courts of appeals hold, *this* Court has spoken clearly and consistently. It "has frequently addressed what general causation experts … must show when a plaintiff alleges injury from toxic exposure," and the "first" of those requirements is to "identify 'the harmful level of exposure to a chemical' at which physical symptoms manifest." *Braggs*, 2024 WL 863356, at *2 (citing authorities); *see* pp.27-29, *supra*. Ruffin does not contend otherwise. Indeed, his appeal to a circuit

split is essentially a concession that he cannot satisfy the Court's current law. If Ruffin disagrees with that law, he can pursue en banc rehearing or Supreme Court review. Absent exceptional circumstances not present here, however, a panel of this Court "may not overturn" prior panel decisions. *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021). And district courts are bound by those decisions, so Judge Lemelle could not have erred by following this Court's decisions rather than out-of-circuit cases.

Second, Ruffin is never entirely clear about the issue on which the circuits are supposedly split. He variously argues that there is a circuit split regarding "the standard of causation for experts," Br.14, "the application of causation standards for toxic tort cases that fall under admiralty and maritime jurisdiction," *id.*, "expert admissibility standards regarding toxic torts under maritime law," *id.* at 15, "interpretation of *Daubert* and Evidentiary Rule 702," *id.*, and "the applicable standard for causation expert admissibility," *id.* at 16. Reflecting this incoherence, Ruffin emphasizes the "clear necessity of uniformity in maritime law throughout the country" and "the uniformity principle underlying general maritime law," *id.* at 14, 20, yet not one of the four decisions he cites from other courts of appeals—including

his principal case, *Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d

11 (1st Cir. 2011)—is a maritime or admiralty case.

Third, none of Ruffin's four cited out-of-circuit decisions establishes a

split.  In *Milward*, for example, the First Circuit reversed the exclusion of a

toxicologist's general-causation opinion, but the decision was narrow and

tailored to the facts of the case.   The court did not address whether

"[s]cientific knowledge of the harmful level of exposure to a chemical" was

a "minimal fact[] necessary to sustain the plaintiffs' burden," *Allen*, 102 F.3d

at 198-99.   Indeed, rather than diverge from this Court's precedents, the

*Milward* court recognized and applied many of the same legal principles that

this Court routinely applies.  *Milward* noted that "[e]xpert testimony may be

excluded if there is too great an analytical gap between the data and the

opinion proffered" and that "[t]rial judges may evaluate the data offered to

support an expert's bottom-line opinions to determine if that data provides

adequate support to mark the expert's testimony as reliable."  *Milward*, 639

F.3d at 15.  It also clarified that the case was "not a situation in which the

available epidemiological studies found that there [wa]s no causal link"

before citing this Court's decision in *Allen* as an example of when "numerous

43

reputable epidemiological studies covering in total thousands of workers" revealed that there was no causation.  *Id*. at 24.

The facts and the district court's analysis in *Milward* also contrast sharply with those here.  There, the district court "repeatedly challenged the factual underpinnings of [the toxicologist's] opinion, and took sides on questions that are currently the focus of extensive scientific research and debate."  *Id*. at 22.  The result was a "gap … of the district court's making."  *Id*.  Here, however, Judge Lemelle never took sides on any scientific questions, and the gaps he identified came largely from Rybicki's own admissions, including that (1) an analysis of studies of petroleum workers showed no association between petroleum related work exposures and prostate cancer, ROA.2975, ROA.10635; (2) a study Rybicki characterized as finding "a positive association between exposure to PAHs in wood and prostate cancer" had in fact found *no* association between exposure to petroleum and prostate cancer, ROA.2966, ROA.10636; and (3) benzo(a)pyrene, though a known carcinogen, had never been shown to cause prostate cancer, ROA.2871, ROA.10643.  In *Milward*, furthermore, the district court improperly weighed the testimony of competing experts.  *Milward*, 639 F.3d at 23.  Judge Lemelle, however, did no such thing.  In short,

the First Circuit's *Milward* decision has no bearing on the exclusion of Rybicki's general-causation opinion here, and *Milward* creates no circuit split.

Nor do Ruffin's three other cited appellate decisions. In *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3d Cir. 1994), the Third Circuit merely concluded that "sometimes [a] differential diagnosis can be reliable with less than full information." *Id.* at 759. That question was before the court because defendants' experts had suggested that plaintiffs' experts had not truly performed differential diagnoses given their failure to order laboratory tests, examine the plaintiffs, or take medical histories. *Id.* at 755. Those circumstances are not present here; as in *Milward*, furthermore, *Paoli* never addressed whether a toxic-tort plaintiff must provide scientific knowledge of the harmful level of exposure to a chemical that can cause the injury of which the plaintiff complains.

The Fourth Circuit in *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999), and the Eighth Circuit in *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000), also did not address the need (or lack thereof) to establish scientific knowledge of the harmful level of exposure to a particular chemical. *Westberry* spoke to whether "a reliable differential

45

diagnosis provides a valid foundation for an expert opinion," with the court concluding that it could.  178 F.3d at 263.  And *Turner*, which *affirmed* the exclusion of the expert testimony at issue, held that even if evidence were reliable enough to establish a causal link, that would not save the opinion of an expert who "simply did not rely upon those items in formulating his opinion" and who "did not scientifically eliminate other potential causes of [the plaintiff's] condition."  229 F.3d at 1209.  It was only in passing that the *Turner* court discussed the admission of differential diagnoses more generally.  *Id.*

As if to confirm the absence of a true circuit split, Ruffin resorts to citing two district court decisions, including one from another circuit. Neither has any persuasive value, neither demonstrates a divide among the courts of appeals, and both are easily distinguishable regardless.  First, Ruffin cites *Porte v. Illinois Central Railroad Co.*, 2018 WL 4404063 (E.D. La. Sept. 14, 2018), contending that the court admitted expert testimony without requiring the identification of a "dose" level of chemicals.  Br.22.  But Ruffin misreads *Porte*, because the harmful dose *was* identified: "Carbon tetrachloride, a somewhat volatile compound five times heavier than air, is

toxic to humans if presented in atmosphere in concentrations of more than 100 parts to 1,000,000." *Porte*, 2018 WL 4404063, at *1 n. 1.

Ruffin next cites *Maas v. BP Exploration & Production, Inc.*, 576 F.Supp.3d 564 (M.D. Tenn. 2021). There, Ruffin contends, the district court "held that 'the law does not require more specificity' than an opinion that [a] [p]laintiff's 'purported injuries were caused generally by 'Corexit'' to support an opinion of general causation." Br.20 (citing *Maas*, 576 F.Supp.3d at 568). But in evaluating general causation, *Maas* relied on *Gass v. Marriott Hotel Services, Inc.*, 558 F.3d 419, 425 (6th Cir. 2009)—a Sixth Circuit case that applied Michigan law, not federal law. *Maas*, 576 F.Supp.3d at 568. *Maas* also assessed a challenge to general causation based only on an expert's failure to identify a specific chemical within the dispersant at issue that could cause the injuries the plaintiff alleged; the court did *not* address the harmful-dose requirement. *Id.* at 568-69. Accordingly, even if this Court could ignore its own decisions based on an out-of-circuit district-court decision, *Maas* provides no support for Ruffin's position.

### 4.    The "Featherweight" Causation Standard Has No Applicability Here.

Ruffin also argues that Judge Lemelle "applied an inflated standard for causation," Br.21, because "the uniformity of the maritime law only calls for a 'featherweight' standard to be applied," *id.* at 9.  Under this lighter standard, Ruffin asserts, "Rybicki's testimony is more than sufficiently helpful and useful for establishing the general and specific causation elements of Ruffin's claim."  Br.21-22.  Ruffin's position is doubly flawed.

For one, the featherweight standard plays no role here.  That standard applies only to negligence claims brought by seamen under the Jones Act or by railroad workers under the Federal Employers' Liability Act.  *See Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (en banc).  Ruffin is neither.  He is not a seaman—he was an onshore cleanup worker (in particular, "on Port Fourchon Beach," ROA.7087)—so the Jones Act is not in play.  *See Sanchez v. Smart Fabricators of Tex., LLC*, 952 F.3d 620, 621 (5th Cir. 2020) (noting that "only seamen are entitled to sue under the Jones Act.").  And he is not a railroad worker, either, so FELA is off the table as well.  *See Del. & Hudson Ry. Co. v. Knoedler Mfrs., Inc.*, 781 F.3d 656, 665 (3d Cir. 2015) ("FELA … gives a remedy only to railroad employees.").  Ruffin's

48

claims arise under general maritime law, ROA.5817, which uses a "higher" standard than the featherweight standard. *In re Cooper/T. Smith*, 929 F.2d 1073, 1076–77 (5th Cir. 1991) ("The burden to prove causation in a Jones Act case is 'very light' or 'featherweight.' … The standard for negligence under general maritime law is higher.").

For another, even assuming the featherweight causation standard applies to general maritime claims, it would not help Ruffin here. Ruffin argues that "Rybicki's opinions are clearly sufficient to meet [the] 'featherweight' standard of proof in this case." Br.26. But Ruffin is conflating the admissibility of an expert opinion with a plaintiff's burden of proof on causation, which are two different things. This Court clarified that point in *Seaman*. There, the plaintiff argued that a special *Daubert* analysis should apply in Jones Act cases because of the statute's "reduced burden of establishing proximate cause." 326 F.App'x at 728 n.41. This Court corrected that misunderstanding: Application of the featherweight causation standard was "irrelevant," and the "standards of reliability and credibility to determine the admissibility of expert testimony under *Daubert* and Rule 702 apply regardless whether [the] burden on proximate causation is reduced," because "the Federal Rules of Evidence and the applicable

standard of causation are 'distinct issues and do not affect one another.'" *Id.* (quoting *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 47 (2d Cir. 2004)). This Court has since stressed that "the clear weight of authority on this point convinces us that *Seaman* was correct" to emphasize that distinction. *Schindler*, 790 F.App'x at 624 n.2 (collecting cases).

Accordingly, then, the *Daubert* admissibility principles that this Court applies to toxic-tort cases, including the requirement that a plaintiff provide "*scientific*—i.e., *expert*—'knowledge of the harmful level of exposure to a chemical,'" apply in *all* toxic-tort cases, including those brought under the statutes that use the featherweight standard (*i.e.*, the Jones Act and FELA). This makes perfect sense, since a toxic-tort claim is simply a type of personal-injury suit in which the plaintiff claims that exposure to a chemical or dangerous substance caused his injury or disease—which, by definition, is the sole basis for a BELO claim. The same toxic-tort standard—and the same gatekeeping standard from *Daubert*—applies in all contexts because the requirement that a plaintiff offer expert testimony is grounded in principles of evidence, not substantive law. In short, what matters is not the substantive causation test that applies to Ruffin's claims, but what type of evidence Ruffin must produce to meet that test—*inter alia*, expert evidence

of the harmful level of exposure to a chemical. Because Ruffin concededly failed to produce such evidence, his expert's general-causation opinion is inadmissible, and he cannot meet any causation standard, featherweight or otherwise.

### 5.    Equitable Principles of Leniency Do Not Aid Ruffin.

Ruffin last contends that Judge Lemelle "should have applied a lenient standard in the interest of equity." Br.26. He justifies this position by invoking "this case's complexity, specifically the mixture and additive effects of different toxicants in crude oil and COREXIT, coupled with the uncertain chemical concentrations of exposure due to flawed or incomplete monitoring data on the part of BP." *Id.* He also complains that Rybicki's task was "impossible," which, Ruffin contends, justifies giving trial courts "the opportunity to apply discretionary leniency." *Id.* at 28. To do so, Ruffin continues, would be "consistent with the thrust of *Daubert*" and this Court's description of the *Daubert* inquiry as "flexible." *Id.* (citing *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012)).

Ruffin is wrong across the board. For starters, he misunderstands what "flexible" means in this context. That term refers to "*Daubert*'s list of specific factors," which "neither necessarily nor exclusively applies to all

experts in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). A court's role as gatekeeper "must be tied to the particular facts," and the "factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id* at 138, 150. Put differently, district courts have leeway in determining how to assess reliability, but that does not mean they may lower the admissibility threshold just because a particular expert would otherwise have trouble meeting it.

Furthermore, the issues here are not unusually complex—and are no more complex than those in this Court's past *Deepwater Horizon* decisions, all of which followed this Court's toxic-tort precedents. *See, e.g., Braggs*, 2024 WL 863356; *Barrington*, 2024 WL 400191; *Prest*, 2023 WL 6518116; *Byrd*, 2023 WL 4046280.

As for Ruffin's claim of "flawed or incomplete monitoring data on the part of BP," Br.26, "the federal government, not BP, was in charge of the spill response," *Fairley v. BP Expl. & Prod., Inc.*, 2022 WL 16731817, at *4 (E.D. La. Nov. 3, 2022); *see also Ctr. For Biological Diversity*, 704 F.3d at 418-19 (explaining that the federal government, by statute, directed the spill response) (citing 33 U.S.C. §§1321(c)(1)(A), (2)(A)). Courts have also "cast

doubt on the assertion that there is a lack of monitoring data associated with the spill." *Peairs v. BP Expl. & Prod., Inc.*, 2022 WL 2817852, at *10 n.53 (E.D. La. July 19, 2022). In fact, an unprecedented amount of data was collected about the *Deepwater Horizon* response, *see, e.g.*, *In re Deepwater Horizon BELO Cases*, 2020 WL 6689212, at *4, undercutting any suggestion that a lack of data has prevented plaintiffs from establishing general causation. Regardless, as this Court has repeatedly explained, "general causation does not depend upon particular sampling taken from the incident in question." *Braggs*, 2024 WL 863356, at *3 (citing *Byrd*, 2023 WL 4046280, at *2). Ruffin does not mention, much less rebut, any of these decisions.

Finally, Ruffin's complaint of purported impossibility "ignores *Daubert* and its progeny." *Braggs*, 2024 WL 863356, at *3. This Court "has consistently recognized the law cannot wait for future scientific investigation and research." *Id.* (citation and internal quotation marks omitted). Instead, courts "must resolve cases on the basis of scientific knowledge that is currently available." *Id.* (cleaned up). Judge Lemelle recognized this point, noting that even if Rybicki's task were indeed impossible, that "d[id] not relieve [Ruffin's] proof requirements of causation" because "the courtroom is not the place for scientific guesswork[,]

even of the inspired sort."    ROA.10641-10642 (quoting *In re Deepwater*

*Horizon BELO Cases*, 2023 WL 2711573, at *3 (N.D. Fla. Mar. 30, 2023)).  This

Court, too, has recognized that "[l]aw lags science; it does not lead it."  *Wells*

*v. SmithKline Beecham Corp.*, 601 F.3d 375, 381 n.33 (5th Cir. 2010) (quoting

*Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)); *accord Tamraz v.*

*Lincoln Elec. Co.*, 620 F.3d 665, 677 (6th Cir. 2010); *Hendrix ex rel. G.P. v. Evenflo*

*Co.*, 609 F.3d 1183, 1203 (11th Cir. 2010); *Hollander v. Sandoz Pharm. Corp.*, 289

F.3d 1193, 1217 (10th Cir. 2002).    Judge Lemelle's exclusion of Rybicki's

flawed general-causation opinion is consistent with that principle and

should be affirmed.

## II. **Judge Lemelle Did Not Abuse His Discretion By Excluding Rybicki's Specific-Causation Opinion.**

Because Ruffin failed to establish general causation, this Court need

not address his challenge to Judge Lemelle's determination that he also

failed to establish specific causation.  *See, e.g.*, *Knight*, 482 F.3d at 352; *Wells*,

601 F.3d at 378, 381; *Macy v. Whirlpool Corp.*, 613 F.App'x 340, 342-43 (5th Cir.

2015).    Even so, Judge Lemelle's exclusion of Rybicki's specific-causation

opinion was correct.

### A.    Rybicki Failed to Determine Ruffin's Dose of Exposure.

**1.**    After establishing general causation, a toxic-tort plaintiff must establish specific causation—that is, that the plaintiff's exposure to the chemical, rather than something else, caused the alleged condition. *Knight*, 482 F.3d at 351. This requires identifying the plaintiff's actual exposure to a harmful chemical—the second "minimal fact[] necessary to sustain the plaintiffs' burden in a toxic tort case." *Allen*, 102 F.3d at 198-99. And because a court "cannot expect lay fact-finders to understand medical causation," specific causation requires admissible expert testimony no less than general causation does. *Seaman*, 326 F.App'x at 723; *see also Knight*, 482 F.3d at 355.

The Court has applied these specific-causation requirements to *Deepwater Horizon* litigation. In *McGill*, for example, the district court excluded an expert's testimony that exposure to oil and Corexit (a dispersant) caused the plaintiff's conditions. 830 F.App'x at 432. This Court affirmed, explaining that not only did the plaintiff's expert fail to identify "the level of oil or Corexit harmful to humans"—general causation—but he also "lacked critical knowledge" about "the extent of McGill's exposure." *Id.* McGill's expert failed to (i) identify McGill's own "probable exposure level"; (ii) "address other potential causes of McGill's

illness"; and (iii) consider "the conditions of exposure McGill may have experienced." *Id.* at 433. These are quintessential questions of specific causation. *See, e.g., Byrd*, 2023 WL 4046280, at *2 ("Once a court concludes that a substance *can* produce the plaintiff's particular injury, it must determine whether the substance *did* produce that injury. That's specific causation." (internal citations omitted)).

**2.** Here, Rybicki never identified Ruffin's "probable exposure level," *McGill*, 830 F.App'x at 433, to any chemical that could cause prostate cancer—that is, how much of the chemical that Ruffin most likely was exposed to. Rybicki even twice admitted as much in his deposition:

> Q. So the truth is, in your report there is no quantitative or mathematical expression of Mr. Ruffin's exposure in this—to PAH or any other chemical?
>
> A. That is correct.
>
> …
>
> Q. Is there any information in your report about Mr. Ruffin's dose of exposure?
>
> A. Not in a quantitative sense, no.

ROA.2978, 2990 (deposition); ROA.10638 (opinion). Yet identifying a plaintiff's exposure level is the second "minimal fact[] necessary to sustain

the plaintiffs' burden in a toxic tort case." *Allen*, 102 F.3d at 198-99.  Judge

Lemelle's exclusion of Rybicki's specific-causation opinion for that failure,

ROA.10637-10639, was therefore correct, and certainly not an abuse of

discretion.

**3.**  Ruffin says hardly anything about this shortcoming.  He notes

Rybicki's suggestion that Ruffin's "intense" exposure could have increased

his risk for prostate cancer.  Br.25.  And he claims that another one of his

experts, Dr. Clark, "confirmed" Rybicki's opinions by using "cancer slope

factors to conduct an exposure assessment to calculate Ruffin's cancer risk."

Br.25-26.  That is the extent of Rybicki's argument on this point, and it fails

to identify any manifest error on Judge Lemelle's part.

First, Rybicki's classification of Ruffin's exposure as "intense" does not

render Rybicki's opinion admissible.  If an expert relies on "incomplete or

grossly inaccurate dosage or duration data," a district court is "justified" in

excluding that expert's opinion.  *Christophersen v. Allied-Signal Corp.*, 939 F.2d

1106, 1114 (5th Cir. 1991).  Thus, to determine a plaintiff's dose of exposure,

an expert must analyze data, such as the environmental sampling data

recorded near a plaintiff's work.  But Rybicki never analyzed such data, and

he acknowledged that he was not even qualified to perform an exposure assessment:

> Q. I'm confirming that you do not consider yourself qualified to perform an exposure assessment of Mr. Ruffin?
>
> A. Not at an expert level, no.

ROA.2842. Rybicki's lack of expertise explains—but does not excuse—his failure to determine Ruffin's dose of exposure. When asked if he knew "the amount of PAH exposure to which Mr. Ruffin was exposed" during his DWH work, all Rybicki could say is that he "[q]ualitatively" knew that "it was a short, intense exposure." ROA.2978. And when asked if he could describe Ruffin's PAH exposure "in math terms," he responded: "I would be reticent to do that." ROA.2978. In other words, Rybicki's view that Ruffin's exposure was "intense," ROA.7088, was "mere guesswork," *Seaman*, 326 F.App'x at 728.

Next, Clark's so-called "confirmation" of Rybicki's opinions is a red herring. Ruffin appeals the exclusion of Rybicki's opinion, so what matters is the reliability and admissibility of what Rybicki had to say, not whether someone else agreed with him. And, in any event, Clark did not agree with Rybicki's specific-causation opinion because Clark never offered any

thoughts on specific causation to begin with.   Indeed, Clark *expressly disclaimed* offering a specific-causation opinion.  ROA.8215 ("I'm not doing a specific causation, no."); ROA.8222 ("I'm not doing a specific analysis. That's something for the epidemiologist or a physician to be doing.").   Judge Lemelle so noted in his ruling, *see* ROA.10413 ("Dr. Clark … makes no specific-causation opinion."), and added for good measure that Clark lacked the "necessary support to opine with sufficient specificity on the cause of Ruffin's cancer" anyway, ROA.10414.   Ruffin says nothing about these deficiencies.

Without identifying Ruffin's dose of exposure, Rybicki's specific-causation opinion was inadmissible, and nothing Ruffin argues on appeal changes that.   Judge Lemelle therefore correctly excluded Rybicki's opinion—and at a minimum did not abuse his discretion in doing so.

### B.    Rybicki Unreliably Attempted a Differential Etiology.

Judge Lemelle also excluded Rybicki's specific-causation opinion for failure to reliably perform a differential etiology when concluding that exposure to PAHs caused Ruffin's prostate cancer.   ROA.10413.   A differential etiology is "a medical process of elimination." *Hendrix*, 609 F.3d at 1195.   The process requires "determining the possible causes for the

59

patient's symptoms and then eliminating each of these possible causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is most likely." *Johnson*, 685 F.3d at 468 (quoting *Westberry*, 178 F.3d at 262). The application of this methodology must be assessed on a case-by-case basis to ensure it has been reliably applied. *Id.*

Here, Rybicki overpromised and underdelivered. In his report, he said he would "systematically and scientifically rule out each potential alternative explanation for Mr. Ruffin's development of prostate cancer." ROA.3050. When the time came to do so, however, Rybicki haphazardly and cursorily declared that "[a]side from [Ruffin's] genetic liability, there would not appear to be any other competing causes for his prostate cancer diagnosis." ROA.3058. Rybicki also began to address Ruffin's body mass index, but never finished his sentence:

> While the plaintiff had a relatively high body mass index, this risk factor alone would not have substantially

ROA.3058 [*sic*].

Rybicki, then, considered just one alternative cause (genetic disposition) and half-considered a second (body mass index), which is plainly insufficient for so complex and prevalent a condition as prostate

cancer. Judge Lemelle acted well within his discretion in finding Rybicki's application of the differential-etiology method unreliable. As he correctly recognized, the method requires experts "to rule out other potential causes of [a] plaintiff's medical condition on a scientific basis," ROA.10640 (citing *McGill*, 830 F.App'x at 433), yet Rybicki had not done so.

Rybicki's failure to consider additional possible causes of Ruffin's prostate cancer was not a mere foot-fault. To the contrary, Ruffin had "extensive truck driving exposure," which has a statistically significant association with prostate cancer. ROA.10639. And "prostate cancer is a slow-growing cancer with a latency period anywhere between 10 to 15 or 20 years after exposure"—a timeline that fit better with Ruffin's truck-driving work than with his cleanup work. ROA.10639, ROA.10639-10640. To be sure, Rybicki mentioned Ruffin's truck-driving experience twice in his report, but both times only in passing. ROA.3123 ("Previous to his work on the BP oil spill, Mr. Ruffin was a truck driver for 20 years with no known occupational exposures."); ROA.3123 ("The plaintiff may have also had a history exposure [*sic*] to diesel exhaust fumes while a truck driver, which have been reported to result in PAH exposures and increased risk for prostate cancer."). Confirming his methodological error, Rybicki admitted

that, in hindsight, "he should have done more to investigate … Ruffin's truck driving exposures."  ROA.10640 (citing ROA.3005-3006).

On this ground for excluding Rybicki's opinion, Ruffin says absolutely nothing.  Because he does not "meaningfully address" Judge Lemelle's reasoning or "identify any error" in it, "it is the same as if [he] had not appealed" at all.  *Hopkins v. Ogg*, 783 F.App'x 350, 355 (5th Cir. 2019).  This rationale thus provides an independent ground for excluding Rybicki's specific-causation opinion.

## C.     Ruffin's Counterarguments Are Unpersuasive.

As with general causation, Ruffin essentially concedes that Rybicki's specific-causation opinion does not satisfy this Court's requirements. Throughout his brief, he loosely connects his arguments—which largely address general causation—to specific causation by mentioning both general and specific causation in one breath.  *See, e.g.*, Br.21 ("Rybicki's expert opinions on general and specific causation are sufficient to meet the standard that applies to plaintiffs proving proximate cause in actions based on general maritime law.");  Br.21-22 ("Under this 'featherweight' standard, Dr. Rybicki's testimony is more than sufficiently helpful and useful for establishing the general and specific causation elements of Ruffin's claim.").

Rybicki never explains how those arguments apply to specific causation, but regardless, for the reasons already discussed, those arguments are unpersuasive in all respects. *See* pp.25-54, *supra*.

Ruffin also appears to contend that all Rybicki needed to do for specific causation was perform a differential diagnosis. *See*, *e.g.*, Br.15 (citing cases for proposition that "differential diagnosis methodology is generally reliable under *Daubert* and Rule 702"); Br.20 (citing case in which "a differential diagnosis along with a statement of the length of [the] [p]laintiff's exposure was sufficient to support an opinion of specific causation"); Br.25 (arguing that Rybicki "prove[d] specific causation…through differential etiology"). But *Allen* and its progeny foreclose this argument: "knowledge that the plaintiff was exposed to [the harmful level of exposure of a chemical]" is a "minimal fact[] necessary to sustain the plaintiffs' burden in a toxic tort case." 102 F.3d at 198-99; *see also, e.g.*, *McGill*, 830 F.App'x at 432. In all events, Judge Lemelle also excluded Rybicki's opinion because his differential analysis was fundamentally flawed—a ruling that Ruffin does not address on appeal. *See* pp.59-62, *supra*. So even if Rybicki were not required to identify Ruffin's exposure to a harmful level of a chemical, his opinion would still be excluded.

63

### III.    Judge Lemelle Correctly Granted Summary Judgment For BP.

This Court has repeatedly held, including in *Deepwater Horizon* cases, that if a toxic-tort plaintiff cannot establish causation through admissible expert testimony, summary judgment is required.  *See*, *e.g.*, *Braggs*, 2024 WL 863356, at *1; *Barrington*, 2024 WL 400191, at *1; *Prest*, 2023 WL 6518116, at *1; *Byrd*, 2023 WL 4046280, at *1; *McGill*, 830 F.App'x at 434; *Schindler*, 790 F.App'x at 622; *Seaman*, 326 F.App'x at 729-31; *Knight*, 482 F.3d at 355.  Ruffin was required to establish both general causation and specific causation through admissible expert testimony, but he did not satisfy either requirement.  Because Rybicki's general-causation and specific-causation opinions were properly excluded, Ruffin lacked expert testimony on the causation element of his claim, and summary judgment was therefore appropriate.  Ruffin offers no argument against the grant of summary judgment independent of his argument that Judge Lemelle erred in excluding Rybicki's causation opinions.  *See* Br.29.  Accordingly, Ruffin's failure to provide admissible expert evidence supporting legal causation entitles BP to summary judgment.

### CONCLUSION

The Court should affirm Judge Lemelle's judgment.

June 17, 2024

Respectfully submitted,

s/ George W. Hicks, Jr.

Adam J. Jagadich
MARON MARVEL BRADLEY
ANDERSON & TARDY LLC
30 South Wacker Dr.
Chicago, IL 60606
Telephone: (312) 579-2012

George W. Hicks, Jr.
Rex W. Manning
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above appellate brief was filed electronically on June 17, 2024, and will therefore be served electronically upon all counsel.

*s/ George W. Hicks, Jr.*

George W. Hicks, Jr.

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief complies with Fed. R. App. P. 32(a)(7)(B) and (C) because it contains 12,710 words. The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman style typeface of 14 points or more.

*s/ George W. Hicks, Jr.*

George W. Hicks, Jr.