No. 23-30854

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

―――――

Floyd Ruffin,

*Plaintiff-Appellant*

v.

BP Exploration & Production, Incorporated; BP America Production Company

*Defendants-Appellees.*

―――――

**On Appeal from**

United States District Court for the Eastern District of Louisiana
U.S.D.C. Case No. 2:20-cv-334
The Honorable Ivan L.R. Lemelle
United States District Court Judge

**REPLY BRIEF OF PLAINTIFF-APPELLANT FLOYD RUFFIN**

Martha Y. Curtis
Hannah L. Brewton
**SHER GARNER CAHILL
RICHTER KLEIN & HILBERT LLC**
909 Poydras Street, Suite 2800
New Orleans, La 70112
(504) 299-2100
(504) 299-2300 Fax
**ATTORNEYS FOR PLAINTIFF-APPELLANT FLOYD RUFFIN**

# **CERTIFICATE OF INTERESTED PERSONS**

Appellant certifies that the following listed persons and entities as described in the fourth sentence of the United States Court of Appeals for the Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1) **Appellant-Plaintiff:**

   Floyd Ruffin

2) **Counsel for Appellant-Plaintiff:**

   Martha Y. Curtis
   Hannah L. Brewton
   SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
   909 Poydras Street, Suite 2800
   New Orleans, Louisiana 70112-4046
   (504) 299-2100

   Charles D. Durkee
   THE DOWNS LAW GROUP, PA
   3250 Mary Street, Suite 307
   Coconut Grove, Florida 33133
   (305) 444-8226

3) **Appellees-Defendants:**

   BP Exploration & Production, Incorporated

   BP America Production Company

**4) Counsel for Appellees-Defendants:**

Devin Chase Reid
Charles B. Wilmore
LISKOW & LEWIS APLC
701 Poydras St #5000
New Orleans, LA 70139
(504) 581-7979

George W. Hicks, Jr.
Rex Manning
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
(202) 879-5000

Dated: July 8, 2024

*S/ Martha Y. Curtis*

_____
**MARTHA Y. CURTIS
ATTORNEY OF RECORD FOR
FLOYD RUFFIN**

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF AUTHORITIES ...............................................................................iv

ARGUMENT .........................................................................................................1

   I.   THE DISTRICT COURT SHOULD HAVE APPLIED THE "FEATHERWEIGHT" STANDARD WHEN ASSESSING MR. RUFFIN'S CAUSATION EXPERT DR. RYBICKI..............................1

   II.   THERE IS A CLEAR CIRCUIT SPLIT REGARDING THE CAUSATION STANDARD FOR EXPERT TESTIMONY .........................6

   III.   THE DISTRICT COURT ERRED IN EXCLUDING DR. RYBICKI INSTEAD OF ALLOWING THE FINDER OF FACT TO WEIGH THE OPINIONS AND THE STUDIES RELIED UPON ........................................................................................8

CONCLUSION ....................................................................................................11

CERTIFICATE OF SERVICE .............................................................................12

CERTIFICATE OF COMPLIANCE ....................................................................13

CERTIFICATE OF ELECTRONIC COMPLIANCE ..........................................14

# **TABLE OF AUTHORITIES**

**CASES**

*Daubert v. Merrell Dow Pharm.*, Inc.,
  43 F.3d 1311 (9th Cir.1995) ..............................................................*passim*

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994) ...........................................................................3, 4

*Knight v. Kirby Inland Marine Inc.*,
  482 F.3d 347 (5th Cir.) ....................................................................................8

*Milward v. Acuity Specialty Products Group Inc.*,
  639 F.3d 11 (1st Cir. 2011)..........................................................................6, 7

*Porte v. Illinois Cent. R.R. Co.*,
  No. CV 17-5657, 2018 WL 440463 (E.D. La. Sept. 14, 2018).......................9

*Seaman v. Seacor Marine, L.L.C.*,
  326 F. App'x 721 (5th Cir. 2009).....................................................................2

*United States v. 14.38 Acres of Land,
More or Less Situated in Leflore Cnty., State of Miss.*,
  80 F.3d 1074 (5th Cir. 1996) ...........................................................................9

*Wills v. Amerada Hess Corp.*,
  379 F.3d 32 (2d Cir.2004) ...............................................................................2

**OTHER**
Fed. R. Evid. 702 Advisory Committee Note to 2011 Amendment..........................3

Stewart, Patricia, et al. "Assessing Exposures from the
Deepwater Horizon Oil Spill Response and Clean-up.:
*Annals of Work Exposures and Health*, 66 Supplement 1, (2022)............................5

Groth, Caroline P., et al. "Methods For the Analysis
of 26 Million VOC Area Measurements During the
Deepwater Horizon Oil Spill Clean-up." *Annals of
Work Exposures and Health*, 66 Supplement 1, il40-il55 (2022) ............................5

Plaintiff-Appellant, Mr. Floyd Ruffin ("Ruffin"), submits this Reply Brief in support of his Appellant Brief. As explained further below, this Court should reverse the District Court's exclusion of Mr. Ruffin's causation expert and dismissal of his case. First, the standard applied by the District Court was more stringent than required by maritime law and other United States Circuits of Appeal. Second, the Court's erroneous conclusion that Dr. Rybicki's causation testimony was unreliable posed an improper ground for his exclusion. Instead, his opinions should have been presented to the finder of fact and criticisms concerning the purported lack of helpfulness of his findings should have gone to the weight of the testimony. For the reasons addressed in Mr. Ruffin's Appellant Brief and this Reply Brief, this Court should reverse the District Court's Judgment.

**I. THE DISTRICT COURT SHOULD HAVE APPLIED THE "FEATHERWEIGHT" STANDARD WHEN ASSESSING MR. RUFFIN'S CAUSATION EXPERT DR. RYBICKI.**

As explained in Mr. Ruffin's Appellant Brief, this Court has applied the "featherweight" causation standard to claims under maritime law—the law which governs Mr. Ruffin's claim. To the extent BP's argument that this Court has held the application of the featherweight causation standard is "irrelevant" to evaluating the admissibility of expert evidence under Daubert, such an argument was misleading. See Appellee Brief, p. 49-50.

1

In an attempt to distinguish the application of this standard to Dr. Rybicki's expert opinions, BP relies on a footnote in *Seaman v. Seacor Marine, L.L.C.*, 326 F. App'x 721 (5th Cir. 2009). The Court held in *Seaman* that the featherweight standard was not relevant to its holding as it pertained to standards of reliability and credibility of expert testimony. *Id*. at n.41. However, in said footnote, the Court cites to the Second Circuit decision in *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 47 (2d Cir.2004) in support of the consensus on the general rule that "the Federal Rules of Evidence and the applicable standard of causation are 'distinct issues and do not affect one another.'" *Id*. at 47. While Mr. Ruffin does not dispute this general rule, the Court in *Wills* stated "we recognize that Daubert's relevancy inquiry may be affected by the reduced statutory burden of proof in such cases." *Id*. at 53 n.9. (citing *Daubert v. Merrell Dow Pharm.*, Inc., 43 F.3d 1311, 1321 (9th Cir.1995)). This is relevant to this dispute because Mr. Ruffin is appealing an erroneously conducted *Daubert* inquiry in which no expert testimony or Deepwater Horizon related-study could ever be deemed helpful or relevant enough under the heightened standards for any BELO Class member.

The *Wills* Court went further to clarify that its ruling regarding whether an expert was properly excluded in that case "rests solely on the fact that the testimony failed to satisfy any of the Daubert factors for assessing **reliability**." *Id*. (emphasis added). Like the Second Circuit, this Circuit has also "express[ed] no opinion on this

2

issue of whether and how *Daubert*'s **relevancy** inquiry is affected by a reduced burden of proof [in a case applying the reduced "featherweight" standard]." *See id.* (emphasis added). It was the relevance or helpfulness prong under *Daubert* that was precisely the issue for the District Court here in excluding Dr. Rybicki. In this case, the Court excluded Dr. Rybicki's opinions mainly because of relevancy concerns: the relevancy of the studies Dr. Rybicki relied on in forming his general causation opinion and the relevancy of the possible causes assessed in Dr. Rybicki's differential etiology used in his specific causation opinion. *See* ROA. 10412-13.

The relevancy or helpfulness inquiry under *Daubert* and the Federal Rules of Evidence sets a low threshold for relevancy. "Unfortunately, some courts have required the expert's testimony to 'appreciably help' the trier of fact. Applying a higher standard than helpfulness to otherwise reliable expert testimony is unnecessarily strict." Fed. R. Evid. 702 Advisory Committee Note to 2011 Amendment. Expert testimony is merely required to fit the facts of the case, and *In re Paoli* is instructive in on that issue within the confines of toxic tort law:

> Daubert's statement that fit "goes primarily to relevance" is not to the contrary. This statement elucidates what the fit requirement is about—that the scientific knowledge must be connected to the question at issue—rather than the standard for evaluating that connection. The passages in Daubert quoted in the text supra, which indicate that the connection between the scientific knowledge and the case must itself constitute scientific knowledge, demonstrate that the standard for fit is higher than bare relevance.

3

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 n.13 (3d Cir. 1994). In noting the "strong preference for admission" under the helpfulness prong of Daubert, the Third Circuit opined:

> A judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate. He or she will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct and may certainly still believe that a jury attempting to reach an accurate result should consider the evidence.

*Id*. at 744-745 (further stating "[t]he same standard of reliability extends to the step in the expert's analysis that 'fits' his or her conclusions to the case at hand.")

Although the relevancy inquiry under Daubert requires something more than bare relevance, the standard for relevance or "fit" is "not that high." *See id*. Thus, the District Court erred as a matter of law by improperly evaluating the relevancy of the studies and history that Dr. Rybicki relied upon in forming his opinions—an issue that should be left to the finder of fact. Taking into consideration the low standard for the relevancy fit of the expert's conclusions on causation and the "featherweight" standard for causation, the District Court erred in excluding Dr. Rybicki because the Court did not find Dr. Rybicki's opinions helpful enough to satisfy the implausibly high and over-heightened dosage standards that have been applied to mass environmental exposure cases.

While the "featherweight" causation standard is applicable to maritime cases, it should particularly be applied to cases such as Mr. Ruffin's, where no quantifiable dose "threshold" exists in the epidemiological literature. While the BP Appellees argue that Dr. Rybicki's opinions are not relevant or reliable because he does not quantify Mr. Ruffin's "actual exposure," the data was not available for Dr. Rybicki to do so. *See* Appellee Brief at p. 55. While the BP Appellees state that "the federal government and BP extensively monitored the workplace to ensure safe exposure levels for workers," this data has been found to be self-serving for BP. *See* Appellee Brief at p. 22.

Most of the human "dosage" data was censored for various reasons, including the fact that "laboratories…prepared calibration standards to investigate compliance, rather than the methods' actual limits of detection." Stewart, Patricia, et al. "Assessing Exposures from the Deepwater Horizon Oil Spill Response and Clean-up.: *Annals of Work Exposures and Health*, 66 Supplement 1, i3-i22 (2022). Indeed, "[i]naccurate exposure estimates among the highest exposed group could affect the exposure-response relationships in the epidemiologic analyses and attenuate the observed disease risks in the highest exposure category." Groth, Caroline P., et al. "Methods For the Analysis of 26 Million VOC Area Measurements During the Deepwater Horizon Oil Spill Clean-up." *Annals of Work Exposures and Health*, 66 Supplement 1, il40-il55 (2022).

5

Here, Mr. Ruffin met the minimal requirements for "scientific knowledge" of the harmful level of exposure despite the District Court finding that the epidemiological evidence was not as helpful as Judge Lemelle desired. ROA. 10412-13 (noting the lack of "quantifiable level of exposure…capable of causing prostate cancer" and criticizing expert's reliance on certain studies to the preference of others chosen within the expert's reasoning and judgment). However, there are no certainties in science and Plaintiff should not be held to anything higher than a featherweight standard of causation to have his proverbial day in court. Although the District Court expressed "'empathy' for the difficulty associated with a harmful-dose finding," it ultimately excluded Dr. Rybicki on grounds of lack of fit or helpfulness to satisfy the causation element of a traditional toxic tort claim. In this respect, the District Court applied an inflated standard for assessing the relevancy of Dr. Rybicki's expert opinions and reliance studies. Thus, the District Court erred in excluding Dr. Rybicki on those grounds.

## II. THERE IS A CLEAR CIRCUIT SPLIT REGARDING THE CAUSATION STANDARD FOR EXPERT TESTIMONY.

While BP in its Appellee Brief contends that Mr. Ruffin has not established the existence of a circuit split, the District Court clearly found the contrary. *See* BP Appellee Brief p. 43, ROA. 10645-46, 10591-92. Judge Lemelle explained on the record that the First Circuit case *Milward v. Acuity Specialty Products Group Inc*. conflicts with Fifth Circuit precedent regarding the standard for causation experts:

> As stated earlier… sometimes the district judges have to render opinions that are based upon binding precedent…I do believe and I took a look at the Milward case in the First Circuit, this to me in my opinion, as if somebody is going to listen to me up there in D.C., is very ripe issue for the Supreme Court to resolve, (*sic*) what **I think is a developing conflict, between at least the Fifth Circuit and the First Circuit**." ROA.10645-10646. (emphasis added).

Referencing *Milward*, 639 F.3d 11 (1st Cir. 2011).

*Milward* evidences the clear circuit split in applicable standards for expert opinions in toxic tort cases—a split that Judge Lemelle specifically identified and noted multiple times during the *Daubert* hearing on Dr. Rybicki. *See* ROA. 10645-46, 10591-92. Judge Lemelle specifically referenced *Milward* in contemplating the "impossibility" of the standard being followed by the Fifth Circuit regarding the causation opinions of Dr. Rybicki. ROA. 10591. In *Milward*, the First Circuit reversed the exclusion of the Plaintiff's general causation expert because his testimony was "based on what is known" and "it is up to the jury to decide whether to accept his opinion" that the toxic exposure to a chemical caused Plaintiff's cancer. *Milward*, 639 F.3d at 15. The expert in Milward combined various lines of scientific inquiry including a differential diagnosis and biological plausibility analysis to form his opinions without identifying a specific dosage threshold, which the First Circuit held was not "any less scientific" because the expert had to utilize his own scientific judgment to weight the evidence available. *Id*. at 18.

7

Here, the higher standard followed by the District Court instead allowed Judge Lemelle to use judgment to weigh the studies that Dr. Rybicki relied upon, instead of allowing Dr. Rybicki to rely on his own scientific judgment and present his opinions to the jury for consideration. Judges should not substitute their own opinion for that of a qualified expert merely because there may be some other expert methodology that may be *more* helpful than the one presented for establishing evidentiary burdens at trial.

### III. THE DISTRICT COURT ERRED IN EXCLUDING DR. RYBICKI INSTEAD OF ALLOWING THE FINDER OF FACT TO WEIGH THE OPINIONS AND THE STUDIES RELIED UPON.

The District Court erred in excluding Dr. Rybicki for his reliance on certain studies and his differential etiology methodology. This Circuit has held that "[w]here an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may go to the weight, not the admissibility, of the expert's testimony." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir.). That is the case here, where Dr. Rybicki utilized and explained the scientific methods he applied in forming his opinions. Instead of allowing the finder of fact to give appropriate weight to the studies relied on by Dr. Rybicki, the District Court excluded Dr. Rybicki entirely.

First, the District Court erred in finding that Dr. Rybicki should have relied on studies of petroleum workers instead of other occupational workers exposed to

PAHs. Dr. Rybicki included studies that focused on PAH exposure and prostate cancer—the main issue of causation for Mr. Ruffin. To the extent Dr. Rybicki did not "take into account every study that is relevant to the question of general causation or otherwise exhibited bias in rendering [his] opinions, those issues go to the weight of [the] opinions, and not the questions of admissibility." *See Porte v. Illinois Cent. R.R. Co.*, No. CV 17-5657, 2018 WL 440463 (E.D. La. Sept. 14, 2018) (citing *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996).

　　Dr. Rybicki explained why the studies of petroleum workers would not have been appropriate reliance materials in his Declaration issued following his deposition. Dr. Rybicki noted the inapplicability of the petroleum worker studies, citing the limitations of the IARC monographs that were used in those studies, the lack of specific exposure assessments, the lack of direct contact of the study subjects with petroleum products, and the impact of the "healthy worker effect." ROA. 7144-46. Dr. Rybicki used his expertise as a highly qualified epidemiologist specializing in PAH's causal role in prostate cancer diagnoses in assessing the studies available and applying them to the facts of this case. Any issue that BP might have had with these reliance materials could be presented via cross-examination, and the District Court should have allowed the jury to weigh such information in forming their own opinion.

9

Second, the District Court erred in finding that Dr. Rybicki did not consider Mr. Ruffin's history as a truck driver in his differential etiology. While differential etiology consists of a comprehensive study of the possible causes of a Plaintiff's disease, it does not require a full dissection of every piece of the Plaintiff's history. However, as BP admits, Dr. Rybicki *did* take into account this truck driving history in his report, stating that "the scientific evidence for an association between truck driving and prostate cancer is modest at best." ROA. 7088. Additionally, in Dr. Rybicki's Declaration, he further explains how he utilized his qualified scientific judgment in considering Mr. Ruffin's history as a truck driver:

> I evaluated his other competing prostate risk factors. First, was the plaintiff's other past occupational exposures, which primarily included 20 years as a truck driver. Exposure to diesel exhaust is the most likely prostate cancer-causing exposure for truck drivers, however, only one study in Germany published 25 years ago reported a significant association with prostate cancer for workers exposed to diesel exhaust and only for those exposed 25+ years. Since the plaintiff's possible exposure to diesel exhaust could be no more than 20 years and given that the European study population and late 20th century exposure period in the above cited study were not relevant to the plaintiff and the plaintiff's truck driving experience, I determined his truck driving occupational history was not a substantial competing cause for his prostate cancer. ROA. 7143.

Thus, the District Court erred in ignoring Dr. Rybicki's explanation of his consideration of Mr. Ruffin's history of truck driving. Dr. Rybicki clearly considered the possibility of Mr. Ruffin's history of truck driving as a cause of his prostate cancer—of which he deemed there was little to no alternative causal risk. Dr.

10

Rybicki properly conducted a differential etiology in accordance with the methods generally accepted in the scientific community and should have been allowed to present this opinion to the jury for them to weigh and consider in making their determination.

## CONCLUSION

The District Court erroneously dismissed Mr. Ruffin's case based on an impossibly heightened causation standard and an improper weighing of Dr. Rybicki's reliance materials and methodology. For these reasons and those included in Mr. Ruffin's Appellant Brief, this Court should reverse the Judgment dismissing Ruffin's claims against the BP Appellees.

Respectfully submitted,

*S/ Martha Y. Curtis*

_____
MARTHA Y. CURTIS (#20446)
HANNAH L. BREWTON (#40178)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 3800
New Orleans, Louisiana 70112-4046
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

**ATTORNEYS OF RECORD
FOR APPELLANT FLOYD RUFFIN**

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on July 8, 2024, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*S/ Martha Y. Curtis*

_____

**MARTHA Y. CURTIS**
**ATTORNEY OF RECORD FOR**
**FLOYD RUFFIN**

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 2,621 words as determined by the word-count function of Microsoft Word 2013, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Times New Roman font, 14-point type face.

*S/ Martha Y. Curtis*

_____
**MARTHA Y. CURTIS**
**ATTORNEY OF RECORD FOR**
**FLOYD RUFFIN**

## **CERTIFICATE OF ELECTRONIC COMPLIANCE**

I hereby certify that (1) the required privacy redactions, if any, have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2; and (3) the document has been scanned and is free of viruses.

*S/ Martha Y. Curtis*

_____

**MARTHA Y. CURTIS**
**ATTORNEY OF RECORD FOR**
**FLOYD RUFFIN**